647 A.2d 662

**Mary E. and Burton K. ALLEBACH, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 13, 1994.

Decided Aug. 26, 1994.

Thomas A. Boulden, for petitioners.

Ronald H. Skubecz, Deputy Atty. Gen., for respondent.

Before COLINS, SMITH and PELLEGRINI, JJ.

COLINS, Judge.

Mary E. and Burton K. Allebach (the Allebachs) bring this petition for review of the November 18, 1992 order of the Board of Finance and Revenue which rejected their appeal from the Department of Revenue's (Department) redetermination of realty transfer tax, pursuant to Section 1102–C of the Tax Reform Code of 1971 (Code),[1] on a conveyance of realty from the Allebachs to Trappe Meadow, Inc.

Based on the Stipulation of Facts filed on February 2, 1994, the Allebachs are husband and wife and are residents of

---

**1.** Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 8102–C. Section 1102–C provides:

> Every person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction or any part thereof ... a State tax at the rate of *one per cent of the value of the real estate represented by such document,* which State tax shall be payable at the earlier of the time the document is presented for recording or within thirty days of acceptance of such document....

(Emphasis added.)

Montgomery County. On April 16, 1987, Mary Allebach and John Ward (Ward), trading as L & W Associates (L & W), entered into an agreement of sale (Agreement) wherein Ward and his nominees or assignees agreed to purchase from the Allebachs a 61–acre tract of undeveloped land in Trappe, Montgomery County at a purchase price of $610,000.00. Under the Agreement, Ward agreed to obtain subdivision and other required approvals and permits for the construction of single family homes or townhouses. Ward further agreed to subdivide three one-acre lots to be retained by the Allebachs.

By an assignment contract (Assignment) dated November 13, 1987, Ward assigned his rights under the April 16, 1987 Agreement to Lou Besa (Besa), a general partner of Trappe Meadow Associates, a limited partnership engaged in constructing homes. Pursuant to the Assignment, Besa agreed to purchase 61 of the Allebachs' 63 acres for $1,643,000.00. The 61–acre tract was described as "Sketch Development Plan–Trappe Meadows" in the plan prepared by Ward's engineers. It was further agreed that Ward would retain three lots for the Allebachs, pursuant to the Agreement.

In accordance with the aforementioned sketch plan, Besa agreed to post security for the planned improvements and to comply with Trappe Borough ordinance provisions governing land development and subdivision, zoning, environmental regulations, water and sewer, and all other applicable statutes. Subsequently, Besa verbally assigned his rights in the Agreement with the Allebachs to his partnership, Trappe Meadow Associates, which obtained all approvals and permits except for the sewer extension permit. On July 5, 1989, Trappe Borough issued final subdivision plan approval permitting subdivision of the tract into 71 lots.

On or about October 19, 1989, the following transactions occurred: (1) In consideration of $1,787,700.00, Ward assigned his rights in the Agreement to Trappe Meadow, Inc., a corporation; (2) Trappe Meadow, Inc. paid $3,200,000.00 to Besa's assignee, Trappe Meadow Associates, for the right to purchase the subject realty from Mary Allebach; and (3) Mary Allebach, by deed recorded on October 23, 1989, conveyed her

land tract to Trappe Meadows, Inc., for $657,828.00, on which conveyance the Allebachs paid realty transfer tax in the amount of $6,578.28.

The Department, on April 12, 1991, notified the Allebachs that they had undervalued the conveyance, the true value of which was $3.2 million, and that this amount was the correct basis upon which to calculate the one-percent realty transfer tax of $32,000.00. In light of the foregoing and the $6,578.28 amount of realty transfer tax already paid by the Allebachs, the Department found that a balance of $25,421.72 in realty transfer tax was still owing. The Department's Board of Appeals and the Board of Finance and Revenue sustained the Department's action, and this petition for review followed.

■ The Allebachs argue that the Board of Finance and Revenue erred in affirming the Department's determination that they owed additional realty transfer tax, and they maintain that the proper basis on which to calculate the tax was the $657,828.00 amount of consideration set forth in the October 23, 1989 deed between the Allebachs and Ward. It is their position that realty transfer tax should be based solely on the value of the document presented to a recorder of deeds for recording and should not include the value of any assignments of the right to purchase. The Allebachs further contend that because an agreement of sale cannot be taxed, the assignment of rights in an agreement of sale cannot be taxed.

There is some merit in the Allebachs' contention that the assignment of rights in a sales agreement to purchase realty is itself personalty and not a real property transaction *per se*, subject to recordation. Both statutory law and case law support limiting the imposition of realty transfer tax to the transfer of interests in real property by way of deed. In *Comach Construction, Inc. v. City of Allentown*, 159 Pa.Commonwealth Ct. 605, 633 A.2d 1336 (1993), this Court recently reaffirmed that "the subject matter of the realty transfer tax is the recording of a deed. A 1% tax, based on the consideration paid for the real estate is required by the party desiring

to record a deed. Thus, the event which triggers the tax is the recording of the deed." *Id.* at 609, 633 A.2d at 1338.

In the present case, however, the record indicates multiple assignments occurred among the parties interested in developing the Allebachs' tract, in exchange for amounts of consideration paid that were far in excess of the $657,828.00 amount listed on the October 23, 1989 deed between the Allebachs and Ward. This maze of assignments understandably raises questions as to the accurate valuation of the actual consideration (monies paid) for the property conveyed, the determination of which is necessary to ascertain the taxable value of real estate conveyed. *Equitable Life Assurance Society of the United States v. Murphy,* 153 Pa.Commonwealth Ct. 338, 621 A.2d 1078 (1993).

Analogous valuation problems arose in *Pennsylvania Builders Association v. Department of Revenue,* 122 Pa.Commonwealth Ct. 493, 552 A.2d 730 (1989), *affirmed* 524 Pa. 134, 569 A.2d 928 (1990), wherein the petitioners argued that "executory building contracts are not subject to the realty transfer tax provisions of the Code because the contract itself is not an interest in real estate." *Id.* at 500, 552 A.2d at 734. The Department therein countered that "the actual consideration or actual monetary worth of . . . contracted improvements is an integral part of the true value of the real estate represented by the deed, or 'document,' to be recorded." *Id.* at 499, 552 A.2d at 734. This Court noted the following:

> Petitioners correctly state that only those documents which convey an interest in real estate are taxable. However, their analogy between agreements of sale and the building contracts here at issue is inapposite because it misidentifies the issue. Our task here is not to decide whether or not these executory construction contracts are taxable. What is at issue is whether or not the Department's use of these contracts as a method of valuation for taxable documents as defined in the transfer tax provisions of the Code will be sanctioned.

*Id.* at 500, 552 A.2d at 734. Applying established principles of statutory construction in an effort to "give effect to all provi-

sions of the transfer tax article," this Court, in *Pennsylvania Builders*, went on to find that legislative intent "allows for the actual consideration of the home building contract to be included in the value base of the deed conveying the building lot, thus imposing the transfer tax on the full value of the real estate represented by the deed." *Id.* at 503, 552 A.2d at 735.

Similarly, in the present matter, we find that the numerous assignments among the parties and the substantial amounts of consideration paid for them were properly included by the Department in redetermining the valuation of the Allebachs' conveyance for realty transfer tax purposes. To find otherwise would vitiate legislative intent and encourage the fashioning of elaborate conveyancing mechanisms designed to circumvent accurate calculation and payment of realty transfer tax. We further reaffirm that "an agency's interpretation ... of a statute which it enforces is entitled to great judicial deference[,]" *Kushner v. Commonwealth*, 160 Pa.Commonwealth Ct. 244, 248, 634 A.2d 786, 788 (1993), and that only where there is "'a *reasonable* doubt'" as to a tax statute's construction or application is the doubt resolved in the taxpayer's favor. *Pennsylvania Builders*, 122 Pa.Commonwealth Ct. at 503, 552 A.2d at 736 (quoting *Commonwealth v. Wilson Products, Inc.*, 412 Pa. 78, 194 A.2d 162 (1963)). In the case before us, there is no such reasonable doubt as to statutory interpretation and application of the realty transfer tax provisions that would warrant a result different from that reached by the Board.

Based on the above discussion, having found that the Board did not err in dismissing the Allebachs' petition for review of the Department's redetermination of realty transfer tax owing, we affirm the Board's order.

## ORDER

AND NOW, this 26th day of August, 1994, judgment in the above-captioned matter is entered in favor of the Commonwealth in the amount of $25,421.72 plus appropriate interest and will become final unless exceptions are filed within thirty

(30) days of the entry of this order pursuant to Pa.R.A.P. 1571(b)(1).