650 A.2d 1169

**EAST NORRITON MEDICAL ASSOCIATES, LTD., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 1994.

Decided Nov. 21, 1994.

George B. Ditter, for petitioner.

Ronald H. Skubecz, Sr. Deputy Atty. Gen., for respondent.

Before COLINS, President Judge, and PELLEGRINI and NEWMAN, JJ.

COLINS, President Judge.

East Norriton Medical Associates, Ltd. (ENMA) petitions for review of a November 27, 1990 order of the Board of Finance and Revenue (Finance and Revenue), which affirmed the determination of the Department of Revenue (Revenue) assessing a deficiency in the amount of tax owing on the transfer of an interest in real estate from Montgomery County Industrial Development Authority (Authority)[1] to ENMA. We affirm.

On December 21, 1984, ENMA contracted for the construction of a medical office building on the subject tract owned by Suburban General Hospital (Hospital). In order to finance the building, the Hospital on December 27, 1984 leased the tract to the Authority. The lease granted the Authority a term of 55 years in exchange for an annual sum of one dollar ($1.00) and the promise to construct a medical office building. The lease also gave the Authority fee simple title to the office building for the duration of the lease. On the same day the Authority issued a $2,825,000 note, secured by the leasehold, to Hamilton Bank; the interest on the loan was exempt from federal income taxes.

Also on December 27, 1984, the Authority entered an installment sale agreement with ENMA, under which ENMA would purchase the leasehold in exchange for payments sufficient to meet the Authority's obligation under the note. At the same time, the Authority assigned its interest in the installment sale agreement to Hamilton Bank, the proceeds going to finance the office building. The office building was completed in May 1986.

In 1989 the parties restructured the financing arrangement. The installment sale agreement was terminated, and the Authority assigned its interest in the lease to ENMA, which

1. The Authority is an industrial development authority created under the Economic Development Financing Law, Act of August 23, 1967, P.L. 251, as amended, 73 P.S. §§ 371–386.

obtained its own financing from Dime Savings Bank of New York. At the time, Dime Savings Bank estimated the value of the leasehold at $5,359,000: the tract of land at $650,000 plus the value of the office building. This 1989 assignment (Lease Assignment) granted to ENMA all the Authority's right, title, and interest in the lease, buildings, and other improvements for the remainder of the term. On April 13, 1989, when the Lease Assignment was recorded, ENMA filed a statement of value and paid a realty transfer tax of $6,500 based on the $650,000 appraised value of the land alone.

On December 15, 1989, Revenue issued a notice of determination to ENMA that the taxable value of the Lease Assignment was $2,825,000, and not $650,000. Revenue assessed a deficiency of $21,750, not including interest. ENMA appealed the determination to Revenue's Board of Appeals and then to Finance and Revenue; both affirmed.

Before this Court, ENMA argues that the realty transfer tax should have been applied only to the value of the ground lease. ENMA reasons that because it contracted for the construction of the office building, it therefore owned the building before the lease transfer. ENMA contends that the Lease Assignment transferred only the ground lease from the Authority to ENMA, and that the taxable value was limited to the value of the unimproved acreage. We find ENMA's arguments unpersuasive.

The realty transfer tax act (Act)[2] imposes a tax of one percent of the value of real estate represented by a transfer of title. Section 1101–C of the Act defines title to real estate to include "without limitation, a leasehold interest or possessory interest under a lease or occupancy agreement for a term of thirty years or more or a leasehold interest or possessory interest in real estate in which the lessee has equity." 72 P.S. § 8101–C. That section also defines value, in pertinent part, "(1) [i]n the case of any bona fide sale of real estate at arm's length for actual monetary worth [to be] the amount of the actual consideration therefor, paid or to be paid...."

2. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 8101–C–8113–C.

Revenue correctly determined that the real estate represented by the Lease Assignment included the office building. Under both the installment sale agreement between the Authority and ENMA and the subsequent Lease Assignment, the subject of the transfer was the Authority's entire interest; that is, the term of years and fee simple title to the office building that the lease required the lessee to construct, which interests the Authority acquired under the lease from Suburban Hospital. Under both agreements, ENMA stepped into the Authority's shoes as lessee. Regardless of who paid for construction of the office building, the leasehold gave fee simple title and possession to the Authority, and ENMA did not acquire these property interests until the Lease Assignment.

■ Revenue also properly determined the taxable value of the transfer. With the 1984 installment sale agreement, the parties entered into a bona fide sale at arm's length and established the purchase price of the leasehold at $2,825,000. The 1987 Lease Assignment was nothing more than a restructuring of the installment sale with new financing; the 1987 value represents appreciation in the value of the subject real estate.

ENMA argues that the value of the office building should not be taxed because it was not an improvement contracted for by the grantor before the transfer, citing as authority *Pennsylvania Builders Association v. Commonwealth*, 122 Pa.Commonwealth Ct. 493, 552 A.2d 730 (1989), *affirmed per curiam*, 524 Pa. 134, 569 A.2d 928 (1990). We do not disagree with ENMA's characterization of the building contract, but ENMA's argument is flawed. In the present case Revenue did not base its redetermination of value on any executory construction agreement existing at the time of the sale.

*Pennsylvania Builders* dealt with the transfer of a building lot with an executory contract for construction of a home on the lot. *Pennsylvania Builders* stands for the proposition that in order to give effect to all the provisions of the realty transfer tax, the actual consideration or monetary worth of the

real estate represented by a deed can include more than the monetary consideration recited in the deed. The Court found that the legislative intent of the tax statute "allows for the actual consideration of the home building contract to be included in the value base of the deed conveying the building lot, thus imposing the transfer tax on the full value of the real estate represented by the deed." *Id.* at 503, 552 A.2d at 735.

*Pennsylvania Builders* was cited most recently in *Allebach v. Commonwealth*, 167 Pa.Commonwealth Ct. 158, 647 A.2d 662 (1994). In that case the Allebachs agreed to sell an undeveloped tract for $610,000. Before delivery of the deed, the buyer's rights in the contract were assigned and reassigned, with the final assignee paying $3.2 million for the right to purchase. Although the seller received only the original sale contract amount upon transfer of the deed, this Court upheld a realty transfer tax on $3.2 million as the taxable value of the real estate. "[T]he numerous assignments among the parties and the substantial amounts of consideration paid for them were properly included by [Revenue] in redetermining the valuation of the Allebachs' conveyance for realty transfer tax purposes." *Id.* at 163, 647 A.2d at 665.

Based on the foregoing discussion and having found that the Board did not err in sustaining Revenue's redetermination of realty transfer tax owing, we affirm the Board's order.

## *ORDER*

AND NOW, this 21st day of November, 1994, judgment in the above-captioned matter is entered in favor of the Commonwealth in the amount of $21,750.00 and will become final unless exceptions are filed within thirty (30) days of the entry of this order pursuant to Pa.R.A.P. 1571(1).