Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania as Statutory Liquidator of Colonial Assurance Company, Petitioner,

v.

COLONIAL ASSURANCE COMPANY, Respondent.

Commonwealth Court of Pennsylvania.

July 14, 1995.

Gregory P. Miller, Beth C. Sheligo and Fank H. Getter, for petitioner.

Preston M. Buckman and Heidi B. Hamman–Shakely, for respondent.

SMITH, Judge.

Before the Court are the objections filed by Royal Bank of Canada (Royal Bank) to the claim evaluation issued by Cynthia M. Maleski, Insurance Commissioner of the Commonwealth of Pennsylvania, as Statutory Liquidator (the Liquidator) of Colonial Assurance Company (Colonial).[1] Royal Bank, as a loss payee, filed a $2,013,236.04 claim against Colonial for the residual value of two Helicopters pursuant a policy of insurance (Policy) issued by Colonial to now defunct Spanno Corporation (Spanno), a corporation engaged in the business of appraising aircraft for third parties. The Liquidator evaluated the claim at zero because the bank's failure to satisfy its contractual obligations with Beneficial Finance Leasing Corporation (Beneficial), also a loss payee under the Policy, precludes the bank's claim for benefits.

I.

Royal Bank filed its objections arguing that it satisfied all of the material contractual obligations required by the Policy and the Agreements of Appraisal and Sale of Aircraft referred to in the Policy; and even assuming that it failed to satisfy any relevant contractual obligation, Royal Bank conferred a benefit upon Colonial and the Liquidator by safeguarding and marketing the Helicopters, offsetting any damage the Liquidator may al-

lege. The Liquidator petitioned this Court for a hearing pursuant to Section 541(b) of the Act of May 17, 1921, P.L. 789, commonly known as the Insurance Department Act (Act), *as amended,* 40 P.S. § 221.41(b). At the request of counsel for the parties, the Court agreed to waive the appointment of a hearing referee as authorized by Section 221.41(b) and instead to decide the matter based upon the following stipulated statement of the issues and facts.[2]

## STATEMENT OF THE ISSUES

1. Is the claim of Royal Bank barred by reason of the Memorandum and Order and Judgment of the United States District Court for the Southern District of New York referred to in paragraph 32 of the Stipulation of Facts set forth [below] and set forth as Exhibit Q to the Schedule of Exhibits?

2. Is the claim of Royal Bank barred by reason of Royal Bank's settlement of its action with Beneficial referred to in paragraph 33 of the Stipulation of Facts set forth [below]?

3. Did coverage under the Policy and Certificates lapse on April 27, 1984 by virtue of Section 521 of the Insurance Department Act (40 P.S. § 221.2 [sic] )?

4. Is Royal Bank entitled to interest on its claim?

## STIPULATION OF FACTS

1. Colonial was an insurance company, organized under the laws of the Commonwealth of Pennsylvania.

2. Spanno Corporation ("Spanno") was a corporation, and engaged in the business

---

1. By order of March 28, 1984, this Court declared Colonial's charter dissolved and directed the Insurance Commissioner to take possession of, administer and liquidate Colonial's assets. The Court determined that Colonial was insolvent and in such condition that the further transaction of business would be financially hazardous to its policyholders, creditors or the public.

2. Article V of the Act, 40 P.S. §§ 221.1–221.63, which governs suspension and involuntary dissolution of an insurance company, was added by Section 2 of the Act of December 14, 1977, P.L. 280. Upon liquidation of an insurance company,

the Liquidator is vested by operation of law with title to the insurer's assets as of the date of the filing of the petition for liquidation. Section 520(c) of the Act, 40 P.S. § 221.20(c). Under Section 761(a)(3) of the Judicial Code, *as amended,* 42 Pa.C.S. § 761(a)(3), and Section 504(d) of the Act, 40 P.S. § 221.4(d), this Court has original jurisdiction over all actions arising under Article V and serves as the ultimate factfinder. *Foster v. Westmoreland Casualty Co.,* 145 Pa.Commonwealth Ct. 638, 604 A.2d 1131 (1992).

of appraising aircraft and other personal property for third parties (the "clients") pursuant to Appraisal and Sale Agreements under which Spanno established depreciation schedules of the appraised future values of such property and agreed to sell the appraised assets so that the clients would realize not less than the appraised future values.

3. On or about June 1, 1981, Colonial issued Master Contract CGL 227798 to Spanno for residual value insurance, under which Colonial agreed to pay on behalf of Spanno to the clients any loss (as defined therein) arising from a sale of insured property. On or about November 19, 1981, the Policy was amended by endorsement of the same date (the policy and endorsement are hereinafter jointly referred to as the "Policy"). A copy of the Policy is annexed as Exhibit A to the Joint Stipulated Schedule of Exhibits ("Schedule of Exhibits") submitted herewith.

4. The Policy, through separate certificates (Nos. SP–00008–A through G and SP–00009–A through G) (the "Certificates"), insured to Beneficial Finance Leasing Corporation ("Beneficial") and Royal Bank as loss payees the residual value of two Sikorsky S–61N helicopters (serial Nos. 61492 and 61722) (the "Helicopters"). Each of the Certificates had identical terms, except as to the amount and depreciation schedule. The total appraised future value of both Helicopters on December 1, 1986 under the Certificates is $4.7 million. A copy of one of the Certificates with the corresponding endorsement of December 4, 1981 adding Royal Bank as a loss payee is annexed as Exhibit B to the Schedule of Exhibits.

5. Agreements of Appraisal & Sale of Aircraft were entered into on or about December 4, 1981 between Spanno and Beneficial with respect to each of the Helicopters (the "Agreements of Appraisal & Sale"). Copies of the Agreements of Appraisal & Sale are annexed as Exhibits C and D to the Schedule of Exhibits. The terms of each are identical except for the reference to the Helicopter to which each pertains, the fee paid, the schedule of equipment in Exhibits A and the Deprecia-

tion Schedules in Exhibits B to the Agreements of Appraisal & Sale.

6. Beneficial obtained the said residual value insurance with respect to the Helicopters in connection with a sale and leaseback transaction involving the Helicopters in late November, 1981.

7. In that transaction, Royal Bank loaned, pursuant to two loan agreements, a total of $7.7 million (the "Loans") to 104464 Canada Ltd. ("Canada Ltd."), a shell corporation owned by E.F. Hutton Leasing, to finance the purchase of the two Helicopters from Okanagan Helicopters Ltd. ("Okanagan").

8. At the same time Canada Ltd. purchased the Helicopters from Okanagan and gave chattel mortgages on the Helicopters to Royal Bank.

9. As part of these transactions, pursuant to two leases dated November 28, 1981 (the "Leases"), Canada Ltd. leased the Helicopters back to Okanagan. Each Lease was for a term of sixty months, ending on November 30, 1986. The Lease payments coincided with the scheduled Loan payments of Canada Ltd. to Royal Bank under the Loan Agreements. Canada Ltd. assigned these Lease payments to Royal Bank as partial repayment of the Loans.

10. The Loan Agreements between Royal Bank and Canada Ltd. provided that, at the end of the five year Leases, the remaining principal balance of the Loans totalling $4.7 million would fall due in two lump sum balloon payments.

11. As part of these interrelated transactions and as security for non-payment of the Loans, Beneficial, pursuant to two Takeout Agreements dated December 4, 1981 (the "Takeout Agreements"), guaranteed to Royal Bank the Lease payments by Okanagan and also agreed that at the expiration of the Leases at the end of November, 1986, Beneficial would purchase the remainder of the Loans from Royal Bank for the balloon payments of $4.7 million and assume ownership of the Helicopters. The Takeout Agreements, copies of which are annexed as Exhibits E and F to the

Schedule of Exhibits, are identical to each other, except for references to the Helicopter to which each pertains.

12. Beneficial received $565,000 as a fee in exchange for entering into the Takeout Agreements.

13. After paying Royal Bank the $4.7 million balloon payments and taking title of the Helicopters at the end of the two Lease terms, Beneficial expected to sell the Helicopters and reimburse itself from the sale proceeds for the $4.7 million balloon payments. Any excess would be pocketed by Beneficial along with $565,000 fee it had received at the time the transaction closed in 1981.

14. To verify this expectation, on or about November 2, 1981, Beneficial, along with Canada Ltd.'s controlling company, E.F. Hutton Leasing, obtained an appraisal from Spanno. That appraisal placed the combined market value of the Helicopters at $6.5 million, far in excess of the $4.7 million balloon notes to become due on November 30, 1986. A copy of this appraisal is annexed as Exhibit G to the Schedule of Exhibits.

15. To guard against any possible decrease in the Helicopters' value below $4.7 million at the end of the lease term, Beneficial obtained the Certificates of insurance under the Policy, which Spanno purchased from Colonial.

16. Beneficial paid a fee of $461,668 to Spanno for the purchase of this insurance, which, among other things, covered payment by Spanno of the premiums to Colonial for this coverage. The total premium paid by Spanno to Colonial was considered earned upon issuance of the Certificates.

17. Had everything proceeded as planned, the insurance coverage provided by Colonial would have reimbursed Beneficial and/or Royal Bank on behalf of Spanno for the full amount of any decrease in value of the Helicopters below $4.7 million at the end of November, 1986, without further cost to Beneficial or Royal Bank. However, events did not proceed as originally anticipated by Beneficial and Royal Bank.

18. In the five years that followed execution of the Policy, the Certificates, the Agreements of Appraisal & Sale, the Leases, the Loan Agreements, and the Takeout Agreements, the market value of the two helicopters fell to a level substantially below the $4.7 million balloon payments due on the Loans. Beneficial received an appraisal in April, 1986 from Helicopter Financial Services, Inc. that the combined resale value of both Helicopters (based on the existing market for these kinds of helicopters) was below $700,000 each, with the likelihood of resale poor. A copy of this appraisal is annexed as Exhibit H to the Schedule of Exhibits. On or about November 24, 1986, Beneficial received a report from its expert appraising the value of the Helicopters at approximately $750,000 each. Copies of this report is annexed as Exhibit I to the Schedule of Exhibits.

19. In addition, during that five-year period, Spanno went out of business and Colonial was placed into liquidation by order of this Court entered March 28, 1984, pursuant to a petition filed with the Pennsylvania Insurance Commissioner ("the Commissioner"). This order appointed the Commissioner and his successor as Statutory Liquidator (the "Liquidator"). A copy of this Order is annexed as Exhibit J to the Schedule of Exhibits.

20. Realizing that the Leases were about to expire on November 30, 1986 and that the balloon payments of $4.7 million would be due, Royal Bank sent Tender Notices to Beneficial on August 7, 1986 of its intention to require Beneficial to purchase all of Royal Bank's rights, titles and interest in and to the Loans and Securities under the terms of the Takeout Agreements. Copies of these Tender Notices are annexed as Exhibit K to the Schedule of Exhibits.

21. By letter dated September 25, 1986 to the Liquidator's Claim Evaluator, Frank Johann ("Johann"), Royal Bank requested information for making a claim under the Policy and Certificate providing residual value insurance with respect to the Helicopters. A copy of this letter is annexed as Exhibit L to the Schedule of Exhibits.

22. Mr. Johann responded to Royal Bank by letter dated November 3, 1986, a copy of which is annexed as Exhibit M to the Schedule of Exhibits. In this letter Mr. Johann advised Royal Bank he was sending under separate cover to Beneficial, Spanno and Royal Bank proof of claims forms "which must be completed and returned by December 31, 1986.["] A copy of the proof of claim form received by Royal Bank from Mr. Johann shortly thereafter is annexed as Exhibit N to the Schedule of Exhibits. Mr. Johann further advised Royal Bank that, after payment of other priority claims, it was unlikely there would be additional assets in the Colonial liquidation estate to pay Royal Bank's claim and, therefore, provided Royal Bank in his letter of November 3, 1986 with the name of the company whom he believed provided 100% reinsurance. Moreover, he referred Royal Bank to section 521 of the Insurance Department Act of 1921.

23. By letter dated November 26, 1986, from Beneficial to Spanno, Beneficial gave notice of its exercise of its option under the Agreements of Appraisal & Sale to require Spanno to sell the Helicopters and to pay the Depreciated Value. It was both (i) delivered by Beneficial to Spanno under the door of Suite 207N at 35 Pinelawn Road, Melville, NY 11747 (the address provided for such notices in the [A]greements of Appraisal & Sale) and (ii) mailed to the same address by certified express mail, return receipt requested. However, because Spanno was out of business, Spanno did not respond to this letter. A copy of this letter and respective envelopes are annexed as Exhibit O to the Schedule of Exhibits.

24. On December 10, 1986, Royal Bank tendered the Helicopters to Beneficial, together with the documentation required under the Takeout Agreements, including two U.S. certificates of airworthiness, and demanded payment of the $4.7 million.

25. Beneficial, however, immediately thereafter, rejected that delivery and refused to make payment. It contended, *inter alia*, that the certificates of airworthiness delivered by Royal Bank were not valid, that delivery of valid airworthiness certificates was a condition precedent under the Takeout Agreements to Beneficial's obligation to perform, and that since the certificates of airworthiness were allegedly not valid, it had no obligation to take the Helicopters and pay Royal Bank the $4.7 million.

26. In view of the repudiation by Beneficial, Royal Bank filed a proof of claim with the Liquidator in the Colonial Liquidation proceedings on December 30, 1986, asserting its claim in the amount of $4,699,954.46 (subject to reduction based on any sale of the Helicopters), as loss payee under the Colonial Policy and Certificates providing residual value coverage on the Helicopters. A copy of Royal Bank's proof of claim is annexed as Exhibit P to the Schedule of Exhibits.

27. On February 17, 1987, Royal Bank filed a lawsuit in the United States District Court for the Southern District of New York against Beneficial and its affiliate Beneficial Leasing Group, Inc., which had guaranteed Beneficial's obligations under the Takeout Agreements, alleging, *inter alia*, breach of the Takeout Agreements and the guarantee and seeking damages, interest, costs and attorneys' fees.

28. From Beneficial's repudiation in December of 1986 to early 1990 and while there was a depressed market for the aircraft in question, Royal Bank took steps to make sure the Helicopters were protected from the weather and risk of damage. In this connection it incurred expenses for insurance on, and storage of, the Helicopters.

29. Towards the end of this three year period, Royal Bank ascertained that there was an improved market for the Helicopters and that they had appreciated in value. At that time, Royal Bank engaged technical and sales experts in this field to handle the marketing and sale of the Helicopters. Through these efforts, Royal Bank was able to sell the Helicopters in February of 1990 without any certificates of airworthiness to two separate Canadian buyers. Those sales resulted in the realization of total net sales proceeds of $2,686,763.96.

30. A bench trial of Royal Bank's action against Beneficial commenced on January 9, 1991. Based on deducting the said net sale proceeds from the $4.7 million balloon payments and adding interest, it was stipulated that the amount of Royal Bank's damages and interest through December 31, 1990 (exclusive of costs and attorneys' fees) was $3,547,715.29.

31. The principal issue at trial turned on whether the delivery of valid certificates of airworthiness to Beneficial was a condition precedent under the Takeout Agreement to Beneficial's obligation to perform, or whether such delivery requirement was only a promise.

32. After the bench trial in January, 1991, the District Court for the Southern District of New York issued a Memorandum and Order entered on June 30, 1992, finding in favor of Beneficial that delivery of valid airworthiness certificates was a condition precedent under the Takeout Agreements, which the Court found Royal Bank failed to satisfy. A judgment was thereupon entered on July 2, 1992, dismissing Royal Bank's complaint. A copy of the Court's Memorandum and Order and Judgment is annexed as Exhibit Q to the Schedule of Exhibits.

33. Royal Bank appealed from the District Court's said order and judgment. Prior to the appeal coming on for argument in early 1993, Royal Bank and Beneficial settled the action and the appeal was thereupon dismissed. Pursuant to the settlement, on or about March 10, 1993 Beneficial paid to Royal Bank by check the sum of $395,000 and assigned to Royal Bank all interest, rights and claims it had or may have had as loss payee or beneficiary in and to the residual value insurance on the Helicopters under the Policy and Certificates. Copies of the check and assignment are annexed as Exhibit R to the Schedule of Exhibits.

34. In the fall of 1991, Royal Bank was contacted by George Chapman, Claims Evaluator for the Liquidator, to discuss compromising Royal Bank's claim and to advise that there then appeared to be assets in the Colonial Liquidation Estate to pay such a compromised claim.

35. By Notice of Claim Evaluation dated September 8, 1992, the Liquidator advised Royal Bank that its claim was evaluated by the Liquidator at $0.00. A copy of this Notice is annexed as Exhibit S to the Schedule of Exhibits.

36. On or about October 26, 1992, Royal Bank filed its objections to the Liquidator's evaluation of its claim. A copy of Royal Bank's objections [is] annexed as Exhibit T to the Schedule of Exhibits.

37. On or about December 22, 1993, the Liquidator filed a Petition for Hearing, pursuant to 40 P.S. § 221.41(b), regarding Royal Bank's claim.

## II.

### ISSUE 1

The Liquidator argues that the principle of collateral estoppel prevents Royal Bank from recovering under the Policy. The Liquidator contends that satisfactory performance under the Agreements of Appraisal & Sale is the *sine qua non* to recovery under the Policy and Certificates, and that pursuant to the Agreements of Appraisal & Sale, Colonial's obligations were contingent upon the tender of the Helicopters with appropriate certificates of airworthiness. Because the delivery of the appropriate certificates was a condition precedent to recovery under the Policy just as it was under the Takeout Agreements, neither Spanno, Beneficial nor Royal Bank could recover from Colonial without satisfying that condition; and the New York District Court's ruling is dispositive of the question whether Royal Bank could have satisfied the condition precedent to coverage under the Policy and Certificates.

 The doctrine of collateral estoppel bars relitigation of an issue where a question of law or fact essential to a judgment was actually litigated and determined by a court of competent jurisdiction. *Christopher v. Council of Plymouth Township,* 160 Pa.Commonwealth Ct. 670, 635 A.2d 749 (1993). Collateral estoppel applies only when the issue decided in the prior case and the issue presented in the current case are identical;

there was a final judgment on the merits; the issue was essential to the judgment; the party against whom estoppel is asserted had a full and fair chance to litigate the merits; and the party against whom estoppel is asserted was a party or in privity with a party in the prior case. *Farley v. Zoning Hearing Bd. of Lower Merion Township,* 161 Pa.Commonwealth Ct. 229, 636 A.2d 1232, *appeal denied,* 539 Pa. 658, 651 A.2d 544 (1994).

█ The Liquidator's argument misperceives the nature of collateral estoppel and the effect of the New York court's findings. The doctrine of collateral estoppel does not apply in the present matter because the issue decided in the New York action and the issues presented by stipulation to the Court in this case are not identical. As indicated in paragraph 31 of the stipulated findings of fact, the issue decided by the New York court was whether Royal Bank's failure to provide certificates of airworthiness precluded recovery under the Takeout Agreements: being the embodiment of the contract between Beneficial and Royal Bank whereunder Beneficial agreed to guarantee lease payments on the Helicopters and purchase the remainder of Royal Bank's loan and assume ownership of the Helicopters.

The contract presented to the Court in the current proceeding is the Policy issued to Spanno by Colonial with Certificates issued to Beneficial and Royal Bank, as loss payees, whereunder Colonial insured the residual value of the Helicopters. Neither the Policy nor the Certificates incorporate the terms of the Takeout Agreement or provide that failure to deliver valid certificates of airworthi-

ness to Beneficial under the Takeout Agreement bars recovery under the Policy.

Therefore, because Royal Bank's entitlement to recovery under the Policy turns on the interpretation of separate and distinct contractual provisions which were not before the New York court, this case presents no identity of issues or relitigation of the merits of Royal Bank's claims in the New York proceedings. Thus the doctrine of collateral estoppel does not preclude Royal Bank's claim against Colonial.[3]

### ISSUE 2

The Liquidator further argues that Royal Bank's claim is barred by reason of its settlement with Beneficial because Royal Bank elected to recover its damages in a fashion which prejudiced the Liquidator's ability under the Policy to pursue the best available price for the Helicopters. The courts in this Commonwealth have long recognized that an insured's actions may, by the terms of an insurance policy, relieve an insurer of its liability under that policy. *Paxton National Ins. Co. v. Brickajlik,* 513 Pa. 627, 522 A.2d 531 (1987); *Bradford v. American Mutual Liability Ins. Co.,* 213 Pa.Superior Ct. 8, 245 A.2d 478 (1968). In *Paxton,* the Pennsylvania Supreme Court determined that an insurer was relieved of liability where the insured materially breached an agreement by refusing to sign a complaint against a third party in the name of the insurer as subrogor.[4]

█ Where the language in a contract is clear and unambiguous, its interpretation is focused on the terms manifestly expressed rather than upon any silent intent of the

---

**3.** Contrary to the Liquidator's implications, the trial judge in the New York action did not determine that failures to supply proper certificates of airworthiness were conditions precedent to the Policy and Certificates and did not decide whether Royal Bank was entitled to benefits under the Policy and Certificates. Inasmuch as the parties have not identified as an issue to be decided by the Court the question of whether deliveries of valid certificates of airworthiness were also conditions precedent to Royal Bank's recovery under the Policy and Certificates, that issue need not be addressed or decided by the Court.

**4.** *See also Weschler v. Carroll,* 396 Pa.Superior Ct. 41, 578 A.2d 13 (1990), *appeal denied,* 528 Pa.

613, 596 A.2d 159 (1991) (administratrix's material breach of the insurance policy's cooperation clause, precluded recovery under the policy). *Accord State Farm Ins. Co. v. Ridenour,* 435 Pa.Superior Ct. 463, 646 A.2d 1188, *appeal denied,* 540 Pa. 585, 655 A.2d 516 (1994); *Archer v. State Farm Ins. Co.,* 419 Pa.Superior Ct. 558, 615 A.2d 779 (1992), *appeal denied,* 535 Pa. 612, 629 A.2d 1375 (1993) (insured's settlement and release of tortfeasor without prior consent of insurer made compliance with subrogation clause in insurance policy impossible thereby extinguishing the obligations of the insurer to provide coverage under the policy).

parties. *Keenan v. Scott Township Auth.,* 151 Pa.Commonwealth Ct. 225, 616 A.2d 751 (1992), *appeal denied,* 535 Pa. 671, 634 A.2d 1118 (1993) (citing *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982)). Hence, a review of the relevant contractual provisions of the Policy is necessary to determine whether the settlement between Beneficial and Royal Bank relieved Colonial of its obligations under the Policy.

■ The Policy and Certificates require Colonial to pay Beneficial and Royal Bank, as loss payees, a sum equal to the loss that arises upon a sale of the Helicopters held pursuant to the provisions of the Agreements of Appraisal & Sale. The term "loss" is defined as "the amount of the excess of the Depreciated Value over the net proceeds paid at the time of a Sale of the [Helicopters] held pursuant to the Agreement"; and a "claim" is recognized as arising "at the time that [Beneficial] exercises its option under the Agreement with a Notice of Claim to be filed with [Colonial] after a Sale has occurred under the terms of the Agreement."

The Policy also contains provisions allowing Colonial to be subrogated to the rights and remedies that Beneficial might have against anyone with financial obligations relating to the Helicopters and further provides:

> 6. *Disposal of Appraisal Assets.* If at any time [Spanno's] business of selling Appraisal Assets is terminated, all rights and obligations of [Spanno] to liquidate or dispose of Appraisal Assets pursuant to the terms of the Agreement, shall be assumed by the Company and/or qualified person or persons appointed by the Company. The Company assumes no other obligation of the Insured, expressed or implied.

The Agreements of Appraisal & Sale reflect that in return for the fee Beneficial paid to Spanno and in the event Beneficial receives the return of the Helicopters pursuant to the Takeout Agreement, Beneficial had the exclusive right and option to require Spanno to sell the Helicopters, pay Beneficial the depreciated value and submit to Colonial a claim for that residual value.

The terms relating to how and where the Helicopters, the title for the Helicopters, and the certificates of airworthiness are to be delivered to Spanno are detailed in the Agreements of Appraisal & Sale, which also provide that if Spanno refused to timely conduct the sale or file a claim with Colonial, Beneficial could sell the Helicopters after five days written notice to Spanno or file a claim with Colonial. If Beneficial failed to comply in any material respect with its obligations under the Agreements of Appraisal & Sale, Spanno was relieved of its obligations and the agreements would be terminated. The agreements also contain a clause prohibiting Beneficial from assigning its rights or delegating its duties under the agreements without Spanno's consent.

Thus the language of the Policy and the Agreements of Appraisal & Sale clearly establish that Colonial's liability arises only after the Helicopters are sold pursuant to the terms of the agreements. Although Beneficial timely notified Spanno of its intent to exercise its option under the Agreements of Appraisal & Sale, no attempt was made to tender the Helicopters to Spanno, Colonial or the Liquidator as contemplated by the agreements. Moreover, the terms of the settlement between Beneficial and Royal Bank regarding the Takeout Agreements terminated any obligations Colonial had in the place of Spanno under the Agreements of Appraisal & Sale because the settlement did not require Beneficial to accept return of the Helicopters and therefore rendered impossible Beneficial's compliance with the material terms of the Agreements of Appraisal & Sale.

Without a return of the Helicopters pursuant to the Takeout Agreement, the Helicopters could not be tendered for a sale held pursuant to the Agreements of Appraisal & Sale, and consequently there can be no loss to support a claim against Colonial for residual value insurance under the Policy. Notwithstanding the provisions of the Agreements of Appraisal & Sale prohibiting Beneficial from assigning its rights under the agreements without prior consent, Beneficial had no enforceable rights under the Policy to assign to Royal Bank as it forfeited those

rights by settling its dispute with Royal Bank without accepting the Helicopters for sale pursuant to the agreements. *See Hedlund Mfg. Co., Inc. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 539 A.2d 357 (1988); *East Norriton Medical Assocs. v. Commonwealth*, 168 Pa.Commonwealth Ct. 421, 650 A.2d 1169 (1994) (an assignee stands in the shoes of the assignor).

Royal Bank argues that there is no precedent to support the Liquidator's contention that the settlement of a contract dispute between two co-insureds bars a claim by either one under an insurance policy because the Liquidator had no claim to a "right of approval" of the settlement as in a settlement of tort damages; Colonial's liability is not dependent upon the amount for which Royal Bank and Beneficial settled; and the Liquidator was not prejudiced by the settlement. The dispositive consideration in this instance is not whether the release of liability of potential claims relieved Colonial of its obligations under the Policy, but whether the terms of the settlement prevented a claim from arising under the Policy. Herein, the terms of the settled dispute relieved Beneficial from its obligations under the Takeout Agreement and without a return of the Helicopters pursuant to the Takeout Agreement and the tendering of the Helicopters for sale pursuant to the Agreements of Appraisal & Sale, there is no recognizable loss under the relevant provisions of the Policy. *See Paxton National Ins. Co.; Bradford.*

Royal Bank also argues that because the Agreements of Appraisal & Sale permitted it,

as loss payee, to sell the Helicopters, it has realized a loss to substantiate a claim for residual value coverage from Colonial. The stipulated facts submitted to the Court confirm that no sale was made in conformity with the terms of the agreements to give rise to a claim under the Policy because Beneficial never accepted return of the Helicopters as indicated previously and neither Beneficial nor Royal Bank provided written notice to Spanno, Colonial or the Liquidator regarding their intent to sell the Helicopters as required by the Agreements of Appraisal & Sale.[5]

### *ISSUE 3*

■ The Liquidator also properly denied Royal Bank's claim on the basis that it was filed after coverage under the Policy and Certificates lapsed by virtue of operation of the Insurance Department Act. Section 520(d) of the Act, 40 P.S. § 221.20(d), fixes the rights and liabilities of an insurer, its creditors, policyholders and all other persons interested in the insurer's assets as of the filing of the petition for liquidation except as provided for in Sections 521 and 539 of the Act, 40 P.S. §§ 221.21, 221.39. The period for which coverage will remain in effect after the entry of a liquidation order is contained in Section 521 which states:

All insurance in effect at the time of issuance an [sic] order of liquidation shall continue in force only with respect to the risks in effect, at that time (i) for a period of thirty days from the date of entry of the

---

5. Royal Bank asserts that the Liquidator improperly interjected into these proceedings issues which the parties have not submitted to the Court in their agreed-upon stipulation of the issues. Specifically, Royal Bank contends that the Liquidator raises the issue of whether coverage under the Policy is barred by Royal Bank's sale of the Helicopters. Close scrutiny of Liquidator's brief demonstrates that the Liquidator has inappropriately raised as an issue whether the sale of the Helicopters by Royal Bank three years before the settlement with Beneficial provides an independent basis to deny coverage. The arguments the Liquidator offers in support of this issue will therefore not be addressed.

With respect to Royal Bank's challenge that the Liquidator improperly raised as an issue Beneficial's failure to exercise its option to require Spanno to sell the aircraft, it must first be

noted that the parties stipulated that Beneficial notified Spanno that it was exercising its option under the Agreements of Appraisal & Sale. As indicated by the Court previously, in ascertaining whether the Beneficial–Royal Bank settlement precluded recovery under the Policy, consideration must be given to actions taken by the parties prior to the settlement which established their legal status and rights at the time of the settlement. Because the Liquidator's argument that Beneficial never sought to exercise its option to require the Liquidator to sell the Helicopters on behalf of Spanno and/or Colonial directly relates to Beneficial's right and ability to comply with prerequisites of the Policy, these arguments were properly raised by the Liquidator and will not be peremptorily disregarded as Royal Bank has requested.

liquidation order; (ii) until the normal expiration of the policy coverage; (iii) until the insured has replaced the insurance coverage with equivalent insurance in another insurer or otherwise terminated the policy; or (iv) until the liquidator has effected a transfer of the policy obligation pursuant to section 523(8), whichever time is less.

The Act makes provisions for special claims in Section 539. Contingent claims are provided for in Sections 539(c) and 537(b)(4), 40 P.S. § 221.37(b)(4), which allow claimants to make late filings and share in distributions as if their claims were not late when the claimants demonstrate that their contingent claims became absolute and were filed as soon as reasonably possible after the claims became absolute.

In the matter sub judice, Royal Bank submitted its proof of claim on December 31, 1986 and indicated the date of loss was December 1, 1986. As Colonial was placed into liquidation by order of this Court dated March 28, 1984, Section 521 fixed April 27, 1984 as the date coverage lapsed under all policies issued by Colonial. Because Royal Bank's alleged loss did not manifest until well after coverage lapsed under the Policy, the Liquidator properly rejected Royal Bank's claim.

■ Royal Bank contends that Section 521 does not bar its claim because the terms of the Policy provide for an immediate transfer to Colonial of the risk that the value of the Helicopters would be less than $4.7 million on December 1, 1986; thus Colonial's obligation arose and became fixed at the time Spanno paid the flat premium and issued the Certificates. Assuming arguendo that Royal Bank is correct that payment of the insurance premium to Colonial and Colonial's issuance of the Certificates put Colonial at immediate risk and fixed its obligation to provide the residual value of the Helicopters, Royal Bank's argument that Section 521 does not preclude its claim still fails because Section 521 tolled that risk in April 1984 and by Royal Bank's own admission, the loss it seeks to recover did not culminate until well after the risk was tolled.

■ While Section 501 of the Act, 40 P.S. § 221.1, provides that its provisions shall be liberally construed to effect its purpose to protect the interests of insureds, creditors, and the public generally, 40 P.S. § 221.1(c), the Act grants broad powers to the Commissioner, as liquidator, to fix the rights and liabilities of claims as of a date certain, Section 520(d), and to do such acts as may be necessary or expedient to accomplish liquidation. Section 523(6) of the Act, 40 P.S. § 221.23(6); *Pennsylvania Ass'n of Life Underwriters v. Foster,* 147 Pa.Commonwealth Ct. 591, 608 A.2d 1099 (1992). Such legislative purposes contradict Royal Bank's contention that cancellation of Colonial's contractual liability pursuant to Section 521 could be unreasonable and unconscionable.

Moreover, the Pennsylvania Supreme Court has recognized that while the designation of a date beyond which the filing of loss claims are barred might work some hardships, the procedure is reasonable and necessary to permit the Liquidator to effectively manage and control existing liabilities for the ultimate benefit of all claimants of insolvent insurers. *See Foster v. Mutual Fire, Marine and Inland Ins. Co.,* 531 Pa. 598, 614 A.2d 1086 (1992), *cert. denied,* —— U.S. ——, ——, ——, 113 S.Ct. 1047, 1066, 1051, 122 L.Ed.2d 356, 371 (1993). Additionally, and as noted by the Liquidator, Section 521 makes no distinction between cancelable and noncancelable policies but applies to all risks in effect at the time the liquidation order is entered.

In the alternative, Royal Bank asserts that even if Section 521 were applicable to Colonial's fixed contractual obligation under the Policy, its claim is not barred because Section 539(c) of the Act if read in conjunction with Section 537(b)(4) reflects a legislative intent to allow claims which are of a contingent nature once they become absolute. This argument fails because Royal Bank's claim was not denied merely because it was filed late but because the alleged loss arose after the insured risk expired, and Royal Bank has not identified any contingent claim which had arisen prior to the Policy lapse that later became absolute.

■ Finally, Royal Bank asserts that Section 539(b) permits its claim. Section 539 provides, in pertinent part:

(b) Any claim that would have become absolute if there had been no termination of coverage under section 521, and which was not covered by insurance acquired to replace the terminated coverage, shall be allowed as if the coverage had remained in effect, unless at least ten days before the insured event occurred either the claimant had actual notice of the termination or notice was mailed to him as prescribed by section 524(a) or 525(a).

Royal Bank's final argument similarly fails because Royal Bank had actual notice of the termination of coverage under the Policy well over ten days before any insured event could have occurred. Royal Bank admits it had notice of Colonial's insolvency and the termination of coverage under the Policy through the November 3, 1986 letter it received from Fran Johann. As the parties do not dispute that Johann's letter was received by Royal Bank more than ten days prior to the date of the bank's alleged loss occurring December 1, 1986, Section 539(b) does not provide a window for coverage under the lapsed Policy.

### Conclusion

Beneficial's settlement with Royal Bank precluded any recovery under the Policy and Certificates, and Colonial's risk under the Policy lapsed prior to the time Beneficial or Royal Bank could have arguably possessed a claim under the Policy. Accordingly, the Liquidator properly evaluated Colonial's claim at $0.00, and the objections to the Liquidator's evaluation filed by Royal Bank are therefore dismissed. Any remaining issues regarding Royal Bank's entitlement to interest on its claim need not be addressed.

### ORDER

AND NOW, this 14th day of July, 1995, the evaluation of the claim Royal Bank of Canada rendered by the Insurance Commissioner of the Commonwealth of Pennsylvania as Statutory Liquidator of Colonial Assurance Company is affirmed, and the objections to that evaluation filed by Royal Bank of Canada are dismissed.