**M. Diane KOKEN, Insurance Commissioner of The Commonwealth of Pennsylvania as Statutory Liquidator of Colonial Assurance Company, Petitioner**

v.

**COLONIAL ASSURANCE COMPANY, Respondent**

Commonwealth Court of Pennsylvania.

Decided April 29, 2005.

Publication Ordered Oct. 7, 2005.

Gregg W. Mackuse, Philadelphia, for petitioner.

William P. Marshall, Colmar, for respondent, Louis Mazzella, Sr.

OPINION BY Judge SMITH–RIBNER.

Final evidentiary hearings were conducted by the Court in the above-referenced insurance liquidation case on November 4, 5, 8, 9 and 15, 2004. The Court heard evidence on the "amended final account and petition for distribution and discharge" (Amended Petition) filed by M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, as Statutory Liquidator (Liquidator) of Colonial Assurance Company (Colonial). The Liquidator filed the Amended Petition on July 14, 2004 pursuant to Sections 546 and 548 of The Insurance Department Act of 1921(Act), Act of May 17, 1921, P.L. 789, *as amended*, added by Section 2 of the Act of December 14, 1977, P.L. 280, 40 P.S. §§ 221.46 and 221.48, for the period March 28, 1984 to December 31, 2003. The Court also heard evidence on all remaining matters pending between the parties that required a disposition to finally bring this matter to an end.

The Court directed Counsel for the parties to enter into a Stipulation identifying all matters that remained to be resolved by the Court following hearing in this case. The Liquidator and Louis Mazzella, Sr. (Mazzella) (sole shareholder of Colonial) complied by entering into the following Stipulation:

I Statutory Liquidator's Amended Final Account and Petition for Distribution and Discharge of M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, in Her Capacity as Statutory Liquidator of Colonial Assurance Company (In Liquidation), Pursuant to 40 P.S. § 221.46 and 40 P.S. § 221.48, for the Period from March 28, 1984 to December 31, 2003;

II Mazzella's Petition to Terminate the Liquidation Proceedings, Discharge the Liquidator and Reinstate the Charter of Colonial Assurance Company;

III Mazzella's Motion to Roll Back Claims Bar Date Until 1991;

IV Mazzella's Motion for Surcharge and the Liquidator's Preliminary Objections thereto and Mazzella's Preliminary Objections to the Liquidator's Preliminary Objections;

V Mazzella's Petition to Strike the Liquidator's Amended Petition and the Liquidator's Response in Opposition;

VI Mazzella's Objections and Supplemental Objections to the Amended Petition; and

VII Robert Savitsky's Objections to the Liquidator's Amended Petition.

*See* Stipulation filed October 18, 2004. Based on the Court's docket entries and the history in this case, the Court agrees that the parties' Stipulation sets forth all of the matters remaining to be resolved.

The Court heard testimony from Joseph DiMemmo (DiMemmo), the Pennsylvania Insurance Department's Director of Liquidations and Rehabilitations Administration; Scott Esworthy (Esworthy), Senior Audit Manager for Brown, Schultz, Sheridan and Fritz; Stephen Phillips (Phillips), Partner in Cunningham Porter and Phillips; William Taylor (Taylor), Deputy Insurance Commissioner for Liquidations, Rehabilitations and Special Funds; Menachem David (David), Certified Public Accountant; and Mazzella. Counsel for the parties submitted their proposed Findings of Fact and Conclusions of Law on January 4 and 6, 2005, respectively. The Court, accordingly, makes the following

Findings of Fact and Conclusions of Law based on the evidence of record.[1]

1. The Court admitted into the record the following hearing Exhibits:

 *(a) Liquidator Exhibits:*

 Liquidator Exhibit 2 (7/22/83 Order of Supervision of Colonial);

 Liquidator Exhibit 3 (Letter from Alfred Sarowitz to Deputy Insurance Commissioner Re: Merchantile and General Reinsurance (M & G) and Colonial);

 Liquidator Exhibit 4 (Letter from Assistant to the Deputy Insurance Commissioner to Alfred Sarowitz Re: M & G)

 Liquidator Exhibit 5 (12/1/83 Suspension Order of Colonial);

 Liquidator Exhibit 7 (Petition for Liquidation);

 Liquidator Exhibit 8 (Consent to Entry of Order of Liquidation of Colonial 3/21/84);

 Liquidator Exhibit 9 (3/28/84 Order of Insolvency, Dissolution and Liquidation of Colonial);

 Liquidator Exhibit 10 (3/23/84 Letter from Assistant Counsel for Pa. Insurance Department to Gerald Mongelli, Esquire enclosing agreement to recover premiums due);

 Liquidator Exhibit 11 (5/3/84 Letter from Gerald Mongelli, Esquire to Insurance Commission Re: Colonial);

 Liquidator Exhibit 12 (5/8/84 Letter from Assistant Counsel for Pa. Insurance Department to Gerald Mongelli, Esquire Re: M & G);

 Liquidator Exhibit 13 (6/12/84 Letter from Gerald Mongelli, Esquire to Insurance Commission re: records of Colonial);

 Liquidator Exhibit 14 (1988 General Release between Commonwealth and Mazzella);

 Liquidator Exhibit 15 (Amended Petition);

 Liquidator Exhibit 16 (Colonial Statement of Net Assets Available for Distribution as of 12/31/03);

 Liquidator Exhibit 17 (7/8/04 Final Claims Distribution Report);

 Liquidator Exhibit 18 (Insurance Liquidation Fund as of 10/31/93);

 Liquidator Exhibit 18A, 18B & 18C (Department of Revenue Report of Revenue and Receipts for Months Ending 3/31/90, 4/30/90 and 5/31/90);

 Liquidator Exhibit 19 (Insurance Liquidation Fund as of 10/31/95);

 Liquidator Exhibits 19A (Commonwealth Fund 112 Balance Sheet—Insurance Liquidation Fund as of 1/31/94);

 Liquidator Exhibits 19B & 19C (Department of Revenue Reports of Revenue and Receipts for Months Ending 1/31/94 and 2/28/94);

 Liquidator Exhibit 19D (Commonwealth Fund 112 Balance Sheet—Insurance Liquidation Fund as of 3/31/94);

 Liquidator Exhibit 19E (Department of Revenue Report of Revenue and Receipts for Month Ending 3/31/94);

 Liquidator Exhibit 20A (Priority Class "A" Claims);

 Liquidator Exhibit 20B (PPPCIGAPPCIGA Reconciliation);

 Liquidator Exhibit 20C (Indiana Guaranty Final Reconciliation);

 Liquidator Exhibit 20D (Ohio Guaranty Fund Reconciliation);

 Liquidator Exhibit 20E (NJPLIGA Reconciliation);

 Liquidator Exhibit 20F (Guaranty Association—Return Premium Reconciliation);

 Liquidator Exhibit 20G (Priority Class "F" Claims);

 Liquidator Exhibit 20H (Priority Class "B" & "G" Claims);

 Liquidator Exhibit 20I (Priority Claims "B" & "G" Claims);

 Liquidator Exhibit 20J (Priority Class "E" Claims—Volume 1);

 Liquidator Exhibit 20K (Priority Class "E" Claims—Volume 2);

 Liquidator Exhibit 20L (Priority Class "E" Claims—Volume 3);

 Liquidator Exhibit 25 (Report on review of reinsurance of Colonial in Liquidation—INS Consultants);

 Liquidator Exhibit 26 (Colonial Assurance Company (Dissolved) Reinsurance Collections Progress Report—prepared by Trinity Square Services, Inc. 2/93);

 Liquidator Exhibit 27 (Colonial Assurance Company (Dissolved) Reinsurance Collections Progress Report # 2—prepared by Trinity Square Services, Inc. 3/93);

 Liquidator Exhibit 28 (Colonial Assurance Company (Dissolved) Reinsurance Collections Progress Report # 3—prepared by Trinity Square Services, Inc. 4/93);

 Liquidator Exhibit 29 (Colonial Assurance Company (Dissolved) Reinsurance Collections Progress Report # 4—prepared by Trinity Square Services, Inc. 6/93);

 Liquidator Exhibit 31 (3/15/04 Letter from Office of Liquidations and Rehabilitations to Scott Esworthy re: claims);

 Liquidator Exhibit 32 (3/29/02 Agreement to Assign Claims)

## FINDINGS OF FACT

1. In 1984, Anthony A. Geyelin, Acting Insurance Commissioner of the Commonwealth of Pennsylvania (Insurance Commissioner), acting in his official capacity, petitioned this Court for the dissolution of Colonial, on the grounds of insolvency, failure to file annual statements, lack of management and absence of fidelity bond. *See* Petition for Liquidation (Liquidator Exhibit 7).

2. Mazzella executed a "Consent to Entry of Order of Liquidation" (Consent Order) on March 21, 1984, whereby he consented to the averments in the Petition for Liquidation filed by the Insurance Commissioner, including the Insurance Department's finding that Colonial was in a financially insolvent condition. Liquidator Exhibit 8; N.T., Nov. 9, 2004, at 1159.

3. Count I of the Petition for Liquidation stated that Colonial had received three claims (totaling $17.8 million) for payment on certificates issued under a Master Policy; that Colonial had reinsured these claims through Mercantile and General Insurance Company (M & G); and that Colonial did not contest validity of the claims. Also Colonial's records showed 100 percent reinsurance on the claims by M & G, but the reinsurer was unauthorized in Pennsylvania and contested its

Liquidator Exhibit 33 (Analysis of uncollected reinsurance subject to assignment between Liquidator and Louis Mazzella, Jr.);
Liquidator Exhibit 33A (Documentation to analysis of uncollected reinsurance);
Liquidator Exhibit 34A (Colonial expenses prior to 1993);
Liquidator Exhibit 34B (Trial balance report for accounting period December 2003) (12/00);
Liquidator Exhibit 35 (Colonial (in liquidation) calculation of interest);
Liquidator Exhibit 36 (11/10/02 Engagement Letter from Brown, Schultz, Sheridan & Fritz to Messrs. Marshall, Murphy and DiMemmo) (signed by William Marshall);
Liquidator Exhibit 36A (11/10/02 Engagement Letter from Brown, Schultz, Sheridan & Fritz to Messrs. Marshall, Murphy and DiMemmo) (signed by Kenneth Murphy);
Liquidator Exhibit 36B (11/10/02 Engagement Letter from Brown, Schultz, Sheridan & Fritz to Messrs. Marshall, Murphy and DiMemmo) (signed by Joseph DiMemmo);
Liquidator Exhibit 37 (1/7/04 Letter from Brown, Schultz, Sheridan & Fritz to Mr. DiMemmo et al. re: scope limitations of audit of Colonial (in liquidation));
Liquidator Exhibit 38 (1/7/04 Letter from Joseph DiMemmo, et al. to Brown, Schultz, Sheridan & Fritz re: special purpose statement of net assets, etc. available for distribution of Colonial);
Liquidator Exhibit 39 (11/26/91 Engagement Letter from Cunningham, Porter and Phillips to Deputy Insurance Commission);

Liquidator Exhibit 40 (Cunningham, Porter and Phillips Independent Auditors Report of Colonial—12/9/99);
Liquidator Exhibit 41 (6/5/01) Letter from William Marshall to Kenneth Murphy re: request for additional documents.
Liquidator Exhibit 65 (Affidavit of Louis Mazzella—4/16/91);
*(b) Mazzella Exhibits:*
Mazzella Exhibit 1 (Documents produced by Brown, Schultz, Sheraton and Fritz);
Mazzella Exhibit 2 (Original accounting records of Menachem David);
Mazzella Exhibit 3 (Statements of Financial Condition created by Kenneth Murphy);
Mazzella Exhibit 8 (Claim number 95260 records);
Mazzella Exhibit 9 (Deposition transcripts of the various witnesses);
Mazzella Exhibit 10 (Notes from the July 2004 meeting with the independent auditors);
Mazzella Exhibit 11 (Expert report of Norman Reitman Company);
Mazzella Exhibit 13 (Correspondence re: Vigilante claims file);
Mazzella Exhibit 14 (8/2/82 Suspension Order);
Mazzella Exhibit 15 (Class B & E Summary);
Mazzella Exhibit 16 (Class G Summary);
Mazzella Exhibit 17 (Documents offered and available for use in cross-examination).

reinsurance coverage on the claims through a lawsuit. Therefore, "an equal amount of the reinsurance ceded has been placed in the liability for unauthorized reinsurance. This reinsurance penalty ... renders Colonial insolvent, as Colonial is not contesting its coverage on these claims, has been presented with demands for payment ... and is unable to pay these claims...." Liquidator Exhibit 7, at 5–6.

4. On March 28, 1984, the Court entered an order of insolvency (Liquidation Order), which provided "that Colonial Assurance Company (hereinafter Defendant) is insolvent and in such condition that the further transaction of business will be hazardous, financially, to its policyholders, its creditors or the public." Liquidator Exhibit 9. The Court liquidated Colonial, dissolved its charter and directed the Insurance Commissioner to take possession of Colonial's property and to liquidate its business and affairs.

5. After entry of the Liquidation Order, Mazzella raised various claims and filed certain actions in which he contended that M & G was an authorized reinsurer in Pennsylvania and consistently asserted that the Liquidator should pursue a reinsurance claim against M & G. Liquidator Exhibits 11, 13.

6. The Insurance Department never changed its position that M & G was not an authorized reinsurer in Pennsylvania, see Liquidator Exhibit 12, and Mazzella presented no evidence to prove that in 1984 M & G was an authorized reinsurer in Pennsylvania and to date has filed no legal action against M & G.

7. Throughout the liquidation, Mazzella did not challenge any of the other grounds stated in the Petition for Liquidation, namely, failure to file annual statements, lack of management and absence of a fidelity bond. Liquidator Exhibit 7.

*I. Liquidator's Amended Petition:*

8. On July 14, 2004, the Liquidator filed her Amended Petition pursuant to Sections 546 and 548 of the Act seeking a final distribution of assets in the Colonial estate and discharge of the Liquidator.

9. The Liquidator presented substantial and credible evidence to support the Amended Petition, which identifies the assets available for distribution, the claims made against the Colonial estate, the claims deemed to be eligible for participation in a distribution of Colonial's assets and the proposed distribution for the claims allowed by the Liquidator. Liquidator Exhibit 15, at Exhibits L and M.

10. The total amount of Colonial's assets available for distribution is $16,523,147.73. Liquidator Exhibit 16; N.T., Nov. 4, 2004, at 126, 202–203.

11. The total income that the Colonial estate earned from March 28, 1984 through December 31, 2003 is $12,589,023.86. Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004, at 69–71. Of this amount, $12,145,483.23 represents investment income. *Id.*

12. The total amount of expenses incurred by the Liquidator in the administration of the Colonial estate from March 28, 1984 through December 31, 2003 is $2,312,160.15. Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004, at 71–79.

13. The total amount of adjustments made to the Colonial estate from March 28, 1984 through December 31, 2003 is $3,893,221.44. Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004, at 122–124.

14. The total amount of liabilities against the Colonial estate is $11,822,598.91. Liquidator Exhibit 17, at 136; N.T., Nov. 4, 2004, at 147–148, 203–203.

15. Colonial's assets less its liabilities results in a surplus of $4,700,548.82. Liquidator Exhibits 16, 17; N.T., Nov. 4, 2004, at 206, 211–212.

16. The Liquidator presented 491 claims as eligible to participate in a distribution of the assets. Liquidator Exhibit 17; N.T., Nov. 4, 2004, at 127.

17. The Amended Petition states the total amounts of claims eligible to participate in a distribution of Colonial's assets by category as follows:

 (a) Category A (Administrative Expenses)—$843,162.56. N.T., Nov. 4, 2004, at 130–134, 137–139, 151–160; Liquidator Exhibit 17; Liquidator Exhibit 20A;

 (b) Category B (Policy Claims)—$9,342,010.29. N.T., Nov. 4, 2004, at 137–137, 160–164, 166–174; Liquidator Exhibit 17; Liquidator Exhibits 20B–E;

 (c) Category C (Federal Government Claims)—$0. N.T., Nov. 4, 2004, at 141–141, 166–168; Liquidator Exhibit 17;

 (d) Category D (Employee Claims)—$0. N.T., Nov. 4, 2004, at 141–143; Liquidator Exhibit 17;

 (e) Category E (General Creditors/Reinsurers)—$1,533,829.13. N.T., Nov. 4, 2004, at 143–144, 175–177; Liquidator Exhibits 17 and 20F;

 (f) Category F (State and Local Government Claims)—$1,069.29. N.T., Nov. 4, 2004, at 145–145, 178–179; Liquidator Exhibits 17 and 20G;

 (g) Category G (Late Filed Claims)—$102,527.65, N.T., Nov. 4, 2004, at 145–148; Liquidator Exhibit 17;

 (h) Category I (Shareholder(s))—$2,390,329. N.T., Nov. 4, 2004, at 147–147, 212–213; Liquidator Exhibit 15 at Exhibit N.

18. As to the claims against Colonial, the Liquidator (a) identified all potential claimants; (b) provided notice to potential claimants; (c) provided proofs of claim to the claimants; (d) worked with guaranty associations where they provided coverage for certain claimants; (e) evaluated claims not covered by any guaranty association; and (f) submitted a petition for distribution when assets were liquified and claims evaluated and agreed upon. N.T., Nov. 4, 2004, at 40–46.

19. From 1984 until 1991 the Liquidator purchased certificates of deposit (C.D.'s) with Colonial's cash assets to earn investment income for the estate. N.T., Nov. 4, 2004, at 69–70.

20. In 1991 the Insurance Department and the Commonwealth's Office of the Treasury (Treasury Office) entered into an agreement whereby the Treasury Office would perform the Insurance Department's investment function, and the Treasury Office began to invest the assets of insolvent estates, including Colonial's, with other funds from the Commonwealth held by the Treasury Office in its normal course of business, N.T., Nov. 4, 2004, at 67–70.

21. The Liquidator sold various assets of the Colonial estate, and all sales proceeds were applied to the estate. Liquidator Exhibit 16.

22. By order dated September 10, 1999, the Court established a May 31, 1999 claims bar date, and the Liquidator applied that claims bar date to all claims allowed against the Colonial estate. N.T., Nov. 4, 2004, at 146 and Nov. 8, 2004, at 691; Liquidator Exhibit 15, at Exhibit O.

23. The total amount of claims asserted against the Colonial estate was $627,269,548.18, and the total amount of claims that the Liquidator allowed is $11,822,598.91, or less than two percent

(2%) of all claims. Liquidator Exhibit 17, at 136.

24. The Liquidator incurred the following types of expenses:

| Expense Type | Description | Record Citation |
| --- | --- | --- |
| Salaries and Benefits | Costs associated with Insurance Department employees providing services for the Colonial estate. | Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004 (Testimony of Joseph DiMemmo), 71-73. |
| Professional Services | Outside services provided in connection with the Colonial estate, including legal services, reinsurance collection services, and auditors. | Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004 (Testimony of Joseph DiMemmo), 73-76. |
| Outside Services | Computer-related services contracted through outside entity. | Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004 (Testimony of Joseph DiMemmo), 76. |
| Travel | Reimbursement of travel expenses related to property and casualty claims specialist independently contracted by Liquidator. | Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004 (Testimony of Joseph DiMemmo), 76-77. |
| Rent | Expenses related to rental truck obtained for purposes of transporting records. | Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004 (Testimony of Joseph DiMemmo), 77-77. |
| Printing | Outside services contracted to provide printing services related to Colonial estate. | Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004 (Testimony of Joseph DiMemmo), 77-77. |
| Postage | Mail costs related to the administration of the Colonial estate. | Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004 (Testimony of Joseph (Testimony of Joseph DiMemmo), 77. |
| Phone Charges | Telephone costs associated with administration of Colonial estate. | Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004 (Testimony of Joseph DiMemmo), 77-78. |
| Miscellaneous | Combined general costs associated with administration of the Colonial estate from March 1984 through December 1992.[2] | Liquidator Exhibit 16, at 2; Liquidator Exhibit 34A; N.T., Nov. 4, 2004 (Testimony of Joseph DiMemmo), 78-80. |

25. The Comptroller's Office makes payments on behalf of the Insurance Department, and it prepared a monthly accounting of the Liquidator's expenses incurred and paid throughout the administration of the Colonial estate. Liquidator Exhibits 34, 34A, 34B; N.T., Nov. 4, 2004, at 83-85.

26. In pursuing the collection of reinsurance on behalf of Colonial, the Liqui-dator identified policy claims against the estate and the relevant reinsurer associated with each claim, and the Liquidator billed the relevant reinsurer for each claim. N.T., Nov. 4, 2004, at 222-223, 225-226, 243-244.

27. In 1991 the Liquidator hired an outside entity to conduct a review of Colonial's reinsurance claims to determine

**2.** In December 1992 the Insurance Department implemented a new system through which the expenses related to the Colonial estate could be itemized in a general ledger. *See* N.T., Nov. 4, 2004, at 79-80. The ex-penses related to the Colonial estate from December 1984 through December 1992 are summarized in Liquidator Exhibits 34A and 34B; N.T., Nov. 4, 2004, at 80-86, 290-291.

whether the reinsurance evaluations were correct. N.T., Nov. 4, 2004, at 226–226, 230–236; Liquidator Exhibit 25.

28. The Liquidator encountered difficulties collecting reinsurance for Colonial because some of the reinsurers were foreign companies not authorized to conduct business in Pennsylvania and some were in rehabilitation or in liquidation. N.T., Nov. 4, 2004, at 226–229, 283; Nov. 9, 2004, at 1146–1147.

29. The Liquidator hired Trinity Square Services, Inc., a collection specialist, to assist in the reinsurance collection efforts, and all reinsurance collected by the Liquidator was applied to the Colonial estate. Liquidator Exhibits 16, 26–29; N.T., Nov. 4, 2004, at 227–228, 240–242.

30. The Liquidator and Mazzella ultimately entered into an agreement whereby the Liquidator assigned to Mazzella the right to pursue any and all reinsurance uncollected by the Liquidator. Liquidator Exhibit 32; N.T., Nov. 4, 2004, at 257–259. The Liquidator presented evidence as to the amount of uncollected reinsurance. N.T., Nov. 4, 2004, at 259–260, 279–283. Liquidator Exhibits 33, 33A.

31. In 1991 the Liquidator hired Cunningham, Porter & Phillips to conduct an independent audit of the Colonial estate (Cunningham Audit). Liquidator Exhibits 39–40; N.T., Nov. 4, 2004, at 283–284.

32. The Cunningham Audit was conducted pursuant to Generally Accepted Auditing Standards (GAAS). N.T., Nov. 5, 2004, at 521–522.

33. Phillips testified that Colonial's assets, investments and investment income were properly accounted for as of September 30, 1999; that the Liquidator's expenses were properly stated and reasonable; and that the claims stated in the Liquidator's report agreed with the claim files. N.T., Nov. 5, 2004, at 527–528, 536–543, 546–548; Liquidator Exhibit 40.

34. In October 2002 Brown, Schultz, Sheridan & Fritz (Brown Schultz) commenced a second audit of the Colonial estate; and it met with the prior auditor, Phillips, and was provided access to his work papers. Liquidator Exhibits 36, 36A, 36B and 37; N.T., Nov. 5, 2004, at 339–341, 393–394.

35. Esworthy credibly testified in this case, and he stated that some of the documents requested by Brown Schultz could not be located for years 1984 through 1992, during which time expenses were detailed essentially on an Excel spreadsheet (prior to the new general ledger system (Custima) instituted in 1993). It appeared to him that every effort was being made to locate records from the state archives, but Brown Shultz determined that a scope limitations letter was required due to the lack of complete expense documentation for the 18–year period of the audit. Liquidator Exhibit 37; N.T., Nov. 5, 2004, at 344–348, 365–367, 369–372, 397–402, 410–411 and 417–419.

36. The Brown Schultz auditors tested approximately fifty percent (50%) of the total expenses of the Colonial estate, fifty percent (50%) of the total investments, almost one hundred percent (100%) of the reinsurance collections and eighty percent (80%) of the dollar amount of the Priority B and Priority E claims that were allowed. N.T., Nov. 5, 2004, at 349–363, 372, 420.

37. Esworthy testified further that, other than the scope limitations letter, Brown Schultz did not report any objections or problems regarding the Liquidator's lack of documentation for the payment of expenses audited, the Liquidator's method of allocating expenses or the Liquidator's investments and reinsurance collections. Nor did the auditors find evidence of fraudulent financial reporting or misap-

propriation of assets, and it did not recommend any changes to the Liquidator's statements of the assets and liabilities of the estate or to the Liquidator's financial statements. N.T., Nov. 5, 2004, at 353–364, 375–379.

38. In examining claim files, Brown Schultz looked at whether a claim had been properly evaluated and whether an estimate had been generated, but it did not question the value of a claim. N.T., November 5, 2004, at 421–423.

39. Taylor testified, among other things, about the functions and responsibilities delegated to the various bureaus and/or offices assigned to handle the administration of liquidations, rehabilitations and special funds, including the workers' compensation security fund, the automobile CAT fund and underground storage tank indemnification fund, and about the engagement of outside services to supplement the expertise of staff. N.T., Nov. 9, 2004, at 979–981.

40. David began serving as the accountant for Colonial in 1980, and up to the present he performs services to whatever extent they are required. He was aware of the liquidation proceedings against Colonial, and as accountant for Colonial he wrote and visited the Insurance Department in 1991 to inquire into Colonial's financial status. He did not obtain all of the requested information, nor was he provided with specific documentation to fully back up the summaries that were given to him. N.T., Nov. 9, 2004, at 1054, 1059–1069.

41. By order dated March 5, 2001, the Court permitted Mazzella and his representatives to attend a meeting with Phillips in an effort to resolve Mazzella's continuing objections to the liquidation process, and following the meeting Mazzella's Counsel requested certain specific information, which the Liquidator provided. N.T., Nov. 5, 3004, at 554–561; Liquidator Exhibit 41.

42. Mazzella's representatives also met with Esworthy, and they were provided with copies of work papers for the Brown Schultz audit. N.T., Nov. 5, 2004, at 382–384; Mazzella Exhibits 1 and 2.

43. Prior to his involvement in Colonial, Mazzella held all levels of adjuster and insurance broker licenses in New York. N.T., Nov. 9, 2004, at 1086.

44. Before entry of the Liquidation Order, Mazzella experienced problems with the management of Colonial, and because of representations made to him by the Insurance Department that Colonial faced a significant deficit and that M & G was not an authorized reinsurer in Pennsylvania, he consented to the liquidation. N.T., Nov. 9, 2004, at 1101–1104.

45. Mazzella executed the General Release in 1988, *see* Liquidator Exhibit 14, but he denies having received adequate information before signing the document. N.T., Nov. 9, 2004, at 1119–1123.

46. As the owner of Colonial, Mazzella entered into reinsurance agreements with foreign reinsurers, but he did not recall whether his Counsel in 1983 was attempting to have M & G accepted by the Insurance Department as an admitted carrier or whether his Counsel ever received a response. N.T., Nov. 9, 2004, at 1140–1147, 1177–1179; *see also* Liquidator Exhibits 11–12.

47. Mazzella executed the consent to entry of the Liquidation Order after consulting with his then Counsel about the various grounds asserted by the Insurance Commissioner in the Petition for Liquidation. N.T., Nov. 9, 2004, at 1157–1166; Liquidator Exhibit 7.

48. The Liquidator recommends that the $4,700,548.82 surplus in the Colonial

estate be distributed as follows: (a) a $2,310,219 distribution in interest to claimants based upon priority and (b) a $2,390,329 distribution to Mazzella, as sole shareholder and Category I claimant of the estate. Liquidator Exhibit 35; N.T., Nov. 4, 2004, at 212–216.

49. The Liquidator recommends that if the proposed $2,310,219 surplus is insufficient to pay interest in full to all classes of creditors, then the highest classes shall receive full interest prior to any other class receiving a part of the surplus.

50. The Liquidator, accordingly, proposes to pay interest to the Category A claimants at a rate of six percent (6%) annually from December 1999 to the present or the statutory legal rate of interest. *See* Section 202 of the Act of January 30, 1974, P.L. 13, *as amended,* 41 P.S. § 202. N.T., Nov. 4, 2004, at 210–212, 216–217. Any surplus remaining after Category A claimants have received a six-percent (6%) annual interest payment shall be used to pay interest to Category B claimants under the same terms. *Id.;* Liquidator Exhibit 35.

51. The Liquidator selected December 1999 as the beginning period for the payment of interest because the Liquidator filed the initial Petition for Distribution at that time. N.T., Nov. 4, 2004, at 209–210, 216–217.

52. The Court finds that additional and lengthy proceedings, not solely attributable to Mazzella, precluded a final distribution of the assets prior to the Liquidator filing her Amended Petition on July 14, 2004 and that her proposal to commence interest from December 1999 is therefore not justified. Instead, interest shall accrue from July 2004 when the Amended Petition was filed.

53. The Court otherwise finds that the Liquidator's efforts were consistent with her statutory obligations and that she properly exercised her authority and discretion to pay interest, albeit on terms modified by the Court.

## II. Mazzella's Petition to Terminate Liquidation Proceedings, etc.:

54. Mazzella consented to the Liquidation Order; the Liquidator has identified and accounted for the assets and liabilities of Colonial; Colonial's insolvency was specifically found by this Court as indicated by the March 21, 1984 order; the Petition for Liquidation identified additional grounds for liquidation that Mazzella did not sufficiently contest, namely, the failure to file annual statements, the lack of management and the absence of a fiduciary bond; and the order formally dissolved Colonial's charter, thereby leaving no charter to be reinstated. Liquidator Exhibits 5, 7, 8, 9, 16, 17; N.T., Nov. 9, 2004, at 976–978; 1159.

55. Mazzella presented no credible evidence to demonstrate that the liquidation proceedings should be terminated, that the Liquidator should be discharged and that the Colonial charter should be reinstated.

## III. Mazzella's Motion to Roll Back Claims Bar Date:

56. By Order dated September 10, 1999, the Court established a claims bar date of May 31, 1999. Mazzella did not appeal the order but instead filed a motion requesting the Court to establish a January 1, 1991 claims bar date.

57. Mazzella presented no evidence to show that the claims bar date was unnecessary or unreasonable or that it prejudiced the Liquidator's authority to manage effectively the liquidation of the Colonial estate in violation of the Act.

*IV. Mazzella's Motion for Surcharge:*

58. Mazzella alleges in his motion to surcharge the Liquidator that the Brown Schultz Audit Report shows that the Liquidator breached her fiduciary duty by failing to account for a number of treaties and/or documents relating to reinsurance and investment income.

59. Mazzella requests that the Liquidator add back into the Colonial estate's as assets for distribution all of the uncollected reinsurance receivables, all investment income that either cannot be accounted for or was lost by prematurely liquidating the investment to a cash-equivalent asset and all expenses that cannot be documented and/or substantiated.

60. The Brown Schultz Audit Report provides no factual support for a surcharge against the Liquidator as there is no finding in the report that the Liquidator engaged in any misappropriation or diversion of Colonial assets, engaged in any self-dealing or wrongfully paid any claim or incurred any expense during the liquidation.

61. In the area of reinsurance collections, the Liquidator assigned to Mazzella all outstanding reinsurance not collected by the Liquidator, including M & G, and as part of that assignment Mazzella released the Liquidator from any failure to act as related to reinsurance collections. Liquidator Exhibit 32.

62. In 1988 Mazzella executed a General Release in favor of the Liquidator in which Mazzella released the Liquidator from known and unknown claims that he might have asserted as a consequence of the operation, supervision, suspension and liquidation of Colonial. Liquidator Exhibit 14.

63. Mazzella failed to offer sufficient or credible evidence to rebut the validity of the Liquidator's assignment of reinsur-ance claims or of Mazzella's General Release or otherwise to support a surcharge against the Liquidator. The Liquidator's preliminary objections to the motion are sustained, and Mazzella's preliminary objections to the Liquidator's preliminary objections are dismissed.

*V. Mazzella's Petition to Strike Amended Petition:*

64. Mazzella's current petition to strike raises some of the same arguments that he raised in his response to the initial petition for distribution filed in December 1999, specifically, that the Liquidator prematurely filed her petition for distribution and failed to provide proper notice to all interested parties in violation of Section 536 of the Act, added by Section 2 of the Act of December 14, 1977, P.L. 280, 40 P.S. § 221.36. The Court rejected Mazzella's arguments as lacking in merit. *See* January 24, 2002 Memorandum Opinion at 5 n3 (Liquidator's Pre–Hearing Brief, Attachment A).

65. The other allegations contained in Mazzella's petition to strike are that the Liquidator has no statutory basis for her proposal to pay interest to claimants and that the Amended Petition contains irrelevant, scandalous and impertinent material, including references, *inter alia*, to an audit characterized as "independent" when it was not, to Colonial's poor record keeping, to Mazzella's *nolo contendere* plea and criminal conviction and to litigation involving the enforcement of a prior settlement agreement, eventually held to be invalid by the Pennsylvania Supreme Court.

66. On November 8, 2004, the Court granted Mazzella's motion in limine and precluded the Liquidator from referring to and presenting any evidence at hearing with regard to Mazzella's *nolo contendere* plea and criminal conviction. N.T., Nov. 8, 2004, at 970. All other grounds for Maz-

zella's petition to strike are rejected · as baseless, except, in part, as to the Liquidator's interest proposal.

### VI. Mazzella's Objections to the Amended Petition:

67. Mazzella has objected to the Liquidator's: characterization of her petition to distribute as an "amended" petition when in fact it is a new petition; payment of claims that are not covered under a policy of insurance; allowance of claims that have not been determined in accordance with the Act; allowance of claims after the original December 1984 claims bar date; allowance of claims after January 1991 when the Liquidator had closed the estate but unilaterally reopened the estate allegedly in an effort to drain its assets; inclusion of scandalous and impertinent material; incurring expenses without justification and/or documentation; reinsurance collection efforts; handling of investments and the sale of real estate for $265,000 ($10,000 less than appraised value); proposed destruction of records; and proposed interest distribution. (Mazzella filed separate motions challenging the claims bar date set by the Court and the Liquidator's proposal to pay interest to claimants.)

68. Mazzella raised a series of claimed deficiencies as to the Liquidator's evidence concerning policyholder claims and general creditor claims (Classes B, E and G) and in particular stated that the Liquidator's documentation is incomplete or that in some cases no supporting documentation exists at all. Mazzella Exhibits 15–17.

69. By Order dated June 5, 2003, the Court provided Mazzella with access to all Class B claim files and to all Class E claims valued at $1,000 or more, and Mazzella provided no·evidence to establish that any claim allowed by the Liquidator was not the result of an agreement with the claimants, was in excess of policy limits or was contrary to law.

70. DiMemmo testified as to the types of claims encompassed in the creditor classes challenged by Mazzella, and he specifically testified as to the identity of Class B and Class E claims and the Liquidator's actions regarding those claims. N.T., Nov. 4, 2004, at 131–138, 140–141, 143–148, 160–177, 195–202.

71. Mazzella challenges certain Class E claims, many of them less than $100. Mazzella Exhibit 16 and Liquidator Exhibit 17. See, e.g., 607 South Avenue Inc. claim ($16); ·Bainder Constr. Co. claim ($55.64); Jaccobi claim ($47); Carlitz claim ($86); Byrd claim ($30); Schesinger claim ($88); Sonneborn claim ($75.60); Marques claim ($24); Morris claim ($21); Garrett claim ($21); Noble claim ($18); Kimble claim ($45); Motyl claim ($13); and Silberman claim ($4).

72. The Liquidator's evidence constitutes sufficient documentation of the claims allowed. Liquidator Exhibit 17.·

73. The Liquidator properly applied the court-ordered May 31, 1999 claims bar date to all claims allowed against the estate. Liquidator Exhibit 15, at Exhibit O; N.T., Nov. 4, 2004, at 146.

74. As to the expenses incurred, the salaries and benefits from March 28, 1984 through December 31, 2003 totaled $339,352.45. Liquidator Exhibit 16, at 2; N.T., Nov. 4, 2004, at 71–73.

75. The total amount of ·expenses for professional services incurred from March 28, 1984 through December 31, 2003 is $721,109.84 and ·includes expenses related to retaining outside counsel to handle litigation against the Liquidator, to providing services in connection with litigation over claims and to retaining outside consultants to perform audits of the estate and to assist in reinsurance collections. Liqui-

dator Exhibit 16, at 2; N.T., Nov. 4, 2004, at 73–76.

76. The Liquidator's collection efforts included collection of premiums, reinsurance, subrogation and salvage. N.T., Nov. 4, 2004, 221–229; Nov. 8, 2004, at 946; Liquidator Exhibits 26–29; see also Liquidator Exhibit 16 and Exhibit C to Liquidator Exhibit 41.

77. From 1984 until 1991 the Liquidator purchased C.D.'s with Colonial's cash assets to earn investment income for the Colonial estate, and in 1991 the Liquidator entrusted Colonial's assets to the Commonwealth's Treasury Office for investment. N.T., Nov. 4, 2004, at 67–70.

78. The Liquidator's liquidation of Colonial's assets, including the sale of its real estate, was consistent with her statutory obligations and with the general process through which the Liquidator administers insolvent estates. N.T., Nov. 4, 2004, at 49–52, 123–124; Nov. 8, 2004, at 909–910.

79. Pursuant to her statutory authority, the Liquidator petitioned the Court for permission to destroy records associated with the liquidated estate, and the Liquidator has notified the Internal Revenue Service of its intention to destroy the records. N.T., Nov. 8, 2004, at 947–949.

80. DiMemmo testified that all claimants will receive 100 percent (100%) of their claims and that the Liquidator proposed to distribute a part of the surplus as interest from December 1999 at the rate of six percent (6%) per annum because some claimants have waited so many years to receive payment.

81. Multiple lawsuits, appeals, discovery issues and other ancillary matters have extended over a very long period of time, which prevented an earlier distribution of the assets, and although considerable delays were caused by Mazzella's litigation against the Liquidator, not all of the delays in this case can be attributable solely to Mazzella.

82. Mazzella provided no credible evidence at the hearing to prove any impropriety by the Liquidator in the overall handling of the Colonial estate, and, in particular, Mazzella failed to show any impropriety in the Liquidator's application of the court-ordered claims bar date, incurring expenses to administer the estate, efforts to collect reinsurance, investment of assets and/or sale of real estate; or the request to destroy Colonial's records no longer needed to be retained.

VII. Objection of Robert Savitsky:

83. The only remaining objection to the Amended Petition was filed by Robert Savitsky, a judgment creditor of Mazzella but not of Colonial. N.T., Nov. 4, 2004, at 187–192.

84. Savitsky filed a garnishment action against the Liquidator, originally filed in the Dauphin County Court of Common Pleas and later transferred to this Court, seeking to attach any distribution payable to Mazzella under the Amended Petition. This Court overruled Mazzella's preliminary objections to the garnishment action. Id.

85. If the Court approves the Amended Petition, the Liquidator will be holding the funds of Mazzella, and the Liquidator does not object to an order for her to satisfy Savitsky's judgment prior to any distribution to Mazzella, despite his objection. N.T., Nov. 4, 2004, at 192.

CONCLUSIONS OF LAW

I. The Liquidator's Amended Petition:

1. Article V of the Act, Sections 501—563, added by Section 2 of the Act of December 14, 1977, P.L. 280, 40 P.S. §§ 221.1—221.63, sets forth the statutory

bases upon which distributions of an insolvent insurer's assets are to be made and liquidation proceedings are to be terminated.

2. The Liquidator's Amended Petition meets the minimal statutory requirements necessary to terminate this liquidation. It identifies, *inter alia*, all assets available for distribution and all claims against the estate and those deemed eligible for participation in the distribution, and it sets forth a proposed distribution for all claims allowed. Liquidator Exhibit 15, at Exhibits L and M.[3]

3. The Liquidator presented substantial evidence to satisfy the requirements of Sections 546 and 548, 40 P.S. §§ 221.46 and 221.48.

4. The audits and related audit reports that confirmed the assets and liabilities comply with Section 551 of the Act, 40 P.S. § 221.51.

5. The Liquidator properly exercised her authority and discretion in seeking to pay interest to claimants, but the proposal to pay interest only to the highest category of creditors from December 1999 instead of from July 2004, when the Liquidator filed the Amended Petition, is not justified by the evidence of record and therefore must be modified consistent with what is reasonable under the circumstances, as hereinafter discussed.

## II. Mazzella's Petition to Terminate Liquidation Proceedings, etc.:

6. Mazzella has attempted to relitigate the initial Liquidation Order through his Petition to Terminate along with numerous other pleadings, but he has failed to meet his evidentiary burden as well as to provide authority for his alternative request to convert the liquidation into a rehabilitation proceeding.

7. Mazzella's objection to the Liquidation Order is based on the assertion that Colonial was not insolvent at the time, but the objection lacks a sufficient legal basis as Mazzella consented to the Liquidation Order and has failed to present credible evidence to show that his consent was other than voluntary. Liquidator Exhibits 8–9.

8. Section 522 of the Act, 40 P.S. § 221.22, mandates dissolution of an insurer at the time of application for a liquidation order, and the Court may order a dissolution upon or after the granting of such an order of liquidation.

9. The Liquidation Order properly dissolved Colonial's charter.

10. Mazzella has provided no evidence to support his request for a reinstatement of the Colonial charter.

## III. Mazzella's Motion To Roll Back The Claims Bar Date:

11. Mazzella filed a motion in December 2000 requesting the Court to establish a claims bar date of January 1, 1991. As previously stated, the Court finds this motion to be without merit and accordingly denies the request.

12. In an opinion and order dated February 3, 2004, the Court stated the rule that the Liquidator had broad powers to fix the rights and liabilities of claims as of the bar date so that she may finally liquidate the estate. *Id.* at 6 (Exhibit G to Liquidator's Pre–Hearing Brief). Also the Act requires that the Liquidator consider for distribution even late-filed claims pur-

---

**3.** By Order dated August 18, 2004, the Court approved the Liquidator's proposed form of Notice of her Amended Petition to be provided to Colonial's creditors. Other than Maz-zella, no Colonial creditor has objected to the Liquidator's Amended Petition. The only other objection came from Savitsky.

suant to Section 537(b), (c) of the Act, 40 P.S. § 221.37(b), (c).

13. The order of distribution is mandated by the Act, which provides in Section 544, 40 P.S. § 221.44, that where sufficient funds exist for paying claims, late-filed claims are to receive distribution prior to any shareholder.

14. There is no prejudice to the orderly administration of the estate by allowing claims filed after January 1, 1991. Because no basis exists to deny claimants their share in a distribution of the assets prior to Mazzella's receiving any funds, *see* Section 544(i), 40 P.S. § 221.44(i), the Court finds no reason to foreclose claims filed after January 1, 1991 and therefore denies Mazzella's motion.

*IV. Mazzella's Motion For Surcharge:*

15. The Act does not provide for the assessment of a surcharge against the Liquidator, and Mazzella's motion is accordingly denied as indicated.[4]

16. The Liquidator, acting within her broad statutory powers and in the best interests of all policyholders, creditors and the public, owes no actionable duty to third parties and individual policyholders or creditors in tort or contract.

17. The Court references here the 2002 Agreement to Assign Claims entered into between the Liquidator and Mazzella and the General Release executed in 1988 by Mazzella, which by their terms preclude a surcharge claim against the Liquidator even if allowed by statute. Liquidator Exhibits 14, 32.

18. Alternatively a claim for breach of fiduciary duty is subject to a two-year statute of limitations. *See* Section 5524(7) of the Judicial Code, 42 Pa.C.S. § 5524(7) (two-year statute of limitations on actions for alleged fraud, which includes breach of fiduciary duty).

19. Mazzella has attacked the Liquidator's handling of the Colonial estate from its inception in 1984, and on the issue of reinsurance Mazzella filed a mandamus action in 1993, which was later dismissed by order dated March 5, 2001, *See, e.g.,* Liquidator Exhibits 11, 13 and 65.

20. Mazzella did not file his surcharge motion until July 2004, and it therefore is barred by the statute of limitations.

21. Also Mazzella offered no credible evidence to show that the Liquidator committed any intentional misappropriation of assets that would impose responsibility against any official bond required under Section 507 of the Act, 40 P.S. § 221.7.

*V. Mazzella's Petition To Strike The Amended Petition:*

22. Mazzella's petition to strike the Amended Petition repeats some of the same arguments that he raised in response to the Liquidator's initial petition for distribution filed in December 1999, *e.g.,* that the petition was premature, which the Court previously rejected. Mazzella raises some additional grounds that lack merit and they too are rejected, except as to the extent previously noted.

23. Mazzella's petition to strike the entire Amended Petition for the grounds asserted is denied.[5]

---

**4.** The Liquidator asserts that the surcharge motion fails to conform to law because it improperly seeks affirmative relief in the form of a motion. A party seeking affirmative relief must pursue such relief by initiating a complaint. *See generally* Pa. R.C.P. No. 1007

(action may be commenced by complaint or praecipe for a writ of summons).

**5.** The averments contained within all of the paragraphs of the Amended Petition identified are relevant to the Amended Petition, except as to the reference to Mazzella's plea and

## VI. Mazzella's Objections To The Amended Petition:

24. The Court rejects Mazzella's contention that no interest should be paid at all to any claimants. While the Liquidator has the discretion to pay interest to claimants, her proposal to pay interest on less than *all* claims and to commence interest from December 1999 is not justified by the record. Instead, because sufficient funds exist in the estate interest shall be paid on *all* claims beginning from July 14, 2004 when the Liquidator filed the Amended Petition.

25. Sufficient surplus funds exist in the Colonial estate to allow the Liquidator to pay interest on *all* of the approved claims at the rate of six percent (6%) per annum.

26. Mazzella's remaining objections to the Amended Petition are denied as they lack merit, based on the Findings of Fact applicable thereto.

## VII. Objection of Robert Savitsky:

27. If the Court approves the Amended Petition, the Liquidator will then be holding funds of Mazzella.

28. To resolve the garnishment action against the Liquidator, the Court may order the Liquidator to satisfy Savitsky's judgment prior to any distribution of funds to Mazzella.

29. Because an exception applies to the rule that Commonwealth agencies cannot be made garnishees by a judgment creditor, the Court dismisses Mazzella's objection to paying Savitsky's judgment and thus will require the Liquidator to satisfy it to remove the last procedural impediment to her discharge.

## DISCUSSION

Preliminarily, the Court notes that this liquidation case involves many complex issues, contains numerous pleadings and counter-pleadings and includes judicial resolutions of multiple ancillary actions. Throughout these proceedings, the Court has allowed extensive and repeated opportunities to Mazzella to engage in discovery; to obtain financial information and data from the Liquidator, including Mazzella's efforts to review sealed court records involved in litigation in New York related to the *"Wallace Leasing"* matter; to meet with auditors of the estate; and ultimately to participate fully in the evidentiary hearings in the case.

 The Liquidator produced literally "thousands of pages" of documents to Mazzella pertaining to the discovery of the financial status of Colonial, and Mazzella was allowed to take depositions of various Insurance Department employees. The Court, at the outset, rejects any objection, assertion or contention by Counsel for Mazzella that he has been precluded from full participation during the hearings or during pre-hearing proceedings, particularly when the extent of the participation afforded to Mazzella was not mandated by the Act.[6]

---

criminal conviction, which the Court will ignore. *See Commonwealth, Department of Environmental Resources v. Hartford Accident & Indem. Co.,* 40 Pa.Cmwlth. 133, 396 A.2d 885, 888 (Pa.Cmwlth.1979) ("[T]here is some authority for the proposition that, even if the pleading [contains] impertinent matter, that matter need not be stricken but may be treated as 'mere surplusage' and ignored.").

6. The Court will be guided by clearly enunciated principles that govern the evidentiary hearings. First, a trial court has the discretion to admit or to deny evidence, to limit the scope of cross-examination of witnesses and to admit or to exclude expert opinions on the ultimate issue to be decided, depending upon the helpfulness of the testimony as compared to its potential to cause confusion or prejudice. *See Chicchi v. Southeastern Pennsylvania Transportation Authority,* 727 A.2d 604,

*I*

*(A)* As for the merits, this Court has held repeatedly that the Liquidator has broad discretion to fix the rights and liabilities of claims as of a date certain and that the Court must defer to the Liquidator's authority and discretion in the administration of liquidation and rehabilitation proceedings unless there has been an abuse of that discretion. *See, e.g., Foster v. Monsour Medical Foundation,* 667 A.2d 18, 21 (Pa.Cmwlth.1995) (holding that the statutory liquidator's power to recoup assets of liquidated insurer should not be encumbered by the court's examination of correctness of liquidator's actions during liquidation); *see also Koken v. Fidelity Mutual Life Ins. Co.,* 803 A.2d 807 (Pa. Cmwlth.2002) (acknowledging applicable abuse of discretion standard of review in reviewing plan of rehabilitation). Moreover, in *Foster v. Colonial Assurance Co.,* 668 A.2d 174, 184 (Pa.Cmwlth.1995), *aff'd sub nom. Kaiser v. Colonial Assurance Co.,* 543 Pa. 626, 673 A.2d 922 (1996), this Court expressly held:

> While Section 501 of the Act, 40 P.S. § 221.1, provides that its provisions shall be liberally construed to effect its purpose to protect the interests of insureds, creditors, and the public generally, 40

P.S. § 221.1(c), the Act grants broad powers to the Commissioner, as liquidator, to fix the rights and liabilities of claims as of a date certain, Section 520(d), and to do such acts as may be necessary or expedient to accomplish liquidation. Section 523(6) of the Act, 40 P.S. § 221.23(6); *Pennsylvania Ass'n of Life Underwriters v. Foster,* 147 Pa. Cmwlth. 591, 608 A.2d 1099 (1992).

Under Section 523 of the Act, 40 P.S. § 221.23, the Liquidator has the power to do the following:

(1) To appoint a special deputy to act for him under this article, and to determine his compensation. The special deputy shall have all powers of the liquidator granted by this section. The special deputy shall serve at the pleasure of the commissioner.

(2) To employ employees and agents, legal counsel, actuaries, accountants, appraisers, consultants and such other personnel as he may deem necessary to assist in the liquidation.

(3) To fix the compensation of employes and agents, legal counsel, actuaries, accountants, appraisers and consultants without complying with civil service regulations.

---

607, 608 (Pa.Cmwlth.1999) ("A decision to admit or deny evidence, including expert testimony, is a matter within the trial court's sound discretion.") ("[T]he scope and limits of cross-examination are within the trial court's sound discretion [which] will not be reversed in the absence of a clear abuse of discretion or an error of law.").

As to the evidence offered, Pa. R.E. Rule 803(6) places the burden on an opposing party to show that the sources of information or other circumstances indicate that a business record is untrustworthy and thus that it does not qualify for any exception to the hearsay rule, *See also* 42 Pa.C.S. § 6108(b) and (c). In *Department of Transportation v. Anjo Constr. Co.,* 666 A.2d 753 (Pa.Cmwlth.1995), the Court determined that summaries may be

admitted even though some of the original underlying documents were destroyed and held that where an original document is lost or destroyed, the fact finder might accept secondary evidence as to contents of the original. *See* Pa. R.E. Rule 1006 (permitting admission of summary evidence); Pa. R.E. Rule 1004 (permitting admission of secondary evidence when original unavailable). *Also see In re Estate of Indyk,* 488 Pa. 567, 573, 413 A.2d 371, 373 (1979) (witness qualified to present a business record "[a]s long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company").

(4) To pay compensation to persons appointed and to defray all expenses of taking possession of, conserving, conducting, liquidating, disposing of or otherwise dealing with the business and property of the insurer. In the event that the property of the insurer does not contain sufficient cash or liquid assets to defray the costs incurred, the commissioner shall advance the costs so incurred out of the appropriation for the maintenance of the Insurance Department. Any amounts so paid shall be deemed expense of administration and shall be repaid to the commissioner for the use of the Insurance Department out of the first available moneys of the insurer.

(5) To hold hearings, to subpoena witnesses, to compel their attendance, to administer oaths, to examine any person under oath, and to compel any person to subscribe to his testimony after it has been correctly reduced to writing, and in connection therewith to require the production of any books, papers, records or other documents which he deems relevant to the inquiry.

(6) To collect all debts and moneys due and claims belonging to the insurer which it is economical to collect, wherever located, and for this purpose to institute timely action in other jurisdictions, in order to forestall garnishment and attachment proceedings against such debts; to do such other acts as are necessary or expedient to collect, conserve or protect its assets or property, including the power to sell, compound, compromise or assign for purposes of collection upon such terms and conditions as he deems best, any bad or doubtful debts; to pursue any creditor's remedies available to enforce his claims.

(7) To conduct public and private sales of the property of the insurer.

(8) To use assets of the estate to transfer policy obligations to a solvent assuming insurer, if the transfer can be arranged without prejudice to applicable priorities under section 544 [40 P.S. § 221.44].

(9) To acquire, hypothecate, encumber, lease, improve, sell, transfer, abandon or otherwise dispose of or deal with, any property of the insurer at its market value or upon such terms and conditions as are fair and reasonable. He shall also have power to execute, acknowledge and deliver any and all deeds, assignments, releases and other instruments necessary or proper to effectuate any sale of property or other transaction in connection with the liquidation is pending, the liquidator shall cause to be filed with the recorder of deeds for the county in which the property is located a certified copy of the order appointing him liquidator.

(10) To borrow money on the security of the insurer's assets or without security and to execute and deliver all documents necessary to that transaction for the purpose of facilitating the liquidation.

(11) To enter into such contracts as are necessary to carry out the order to liquidate, and to affirm or disavow any contracts to which the insurer is a party.

(12) To continue to prosecute and to institute in the name of the insurer or in his own name any and all suits and other legal proceedings, in this Commonwealth or elsewhere, and to abandon the prosecution of claims he deems unprofitable to pursue further. If the insurer is dissolved under section 522 [40 P.S. § 221.22], he shall have the power to apply to any court in this State or elsewhere for leave to substitute himself for the insurer as plaintiff.

(13) To prosecute any action which may exist in behalf of the creditors, members, policyholders or shareholders of the insurer against any officer of the insurer, or any other person.

(14) To remove any or all records and property of the insurer to the offices of the commissioner or to such other place as may be convenient for the purposes of efficient and orderly execution of the liquidation.

(15) To deposit in one or more banks in this Commonwealth such sums as are required for meeting current administration and operating costs.

(16) To invest all sums not currently needed, unless the court orders otherwise.

(17) To file any necessary documents for record in the office of any recorder of deeds or record office in this Commonwealth or elsewhere where property of the insurer is located.

(18) To assert all defenses available to the insurer as against third persons, including statutes of limitation, statutes of frauds and the defense of usury; a waiver of any defense by the insurer after a petition in liquidation has been filed shall not bind the commissioner. When a guaranty association has an obligation to defend a suit, the liquidator shall give precedence to such obligations and shall defend only in the absence of a defense by the guaranty association.

(19) To exercise and enforce all the rights, remedies, and powers of any creditor, shareholder, policyholder or member, including any power to avoid any transfer or lien that may be given by the general law and that is not included with sections 528 through 530 [40 P.S. §§ 221.28—221.30].

(20) To intervene in any proceeding wherever instituted that might lead to the appointment of a receiver or trustee, and to act as the receiver or trustee whenever the appointment is offered.

(21) To enter into agreements with any receiver or commissioner of any other state relating to the rehabilitation, liquidation, conservation or dissolution of an insurer doing business in both states.

(22) To exercise all powers now held or hereafter conferred upon receivers by the laws of this Commonwealth not inconsistent with the provisions of this article.

(23) The enumeration, in this section, of the powers and authority of the liquidator shall not be construed as a limitation upon him, nor shall it exclude in any manner his right to do such other acts not herein specifically enumerated, or otherwise provided for, as may be necessary or expedient for the accomplishment of or in aid of the purpose of liquidation.

40 P.S. § 221.23.

Upon entry of an order to liquidate the business of a domestic insurer, the Liquidator shall be vested by operation of law with title to all of the insurer's property, contracts and rights of action and all of its books and records, wherever located, as of the date of the filing of the petition for liquidation. Section 520(c) of the Act, 40 P.S. § 221.20(c). Most importantly, however, the Act reserves exclusive authority in the Liquidator to allow claims against the insurer ordered liquidated. Specifically, Section 545, 40 P.S. § 221.45, provides in pertinent part:

Liquidator's recommendations to the court

(a) The liquidator shall review all claims duly filed in the liquidation and shall make such further investigation as he shall deem necessary. He may comport, compromise or in any other manner negotiate the amount for which

claims will be recommended to the court.... As soon as practicable, he shall present to the court a report of the claims against the insurer with his recommendations. The report shall include the name and address of each claimant, the particulars of the claim, and the amount of the claim finally recommended, if any.

(b) The court may approve, disapprove, or modify, the report on claims by the liquidator, except that the liquidator's agreements with other parties shall be final and binding on the court to the extent permitted by law. Such recommendations as are not modified by the court within a period of sixty days following submission by the liquidator shall be treated by the liquidator as allowed recommendations, subject thereafter to later modification or to rulings made by the court pursuant to section 541 [40 P.S. § 221.41].

*See also Foster v. Colonial Assurance Co.,* 668 A.2d 174 (Pa.Cmwlth.1995); *Foster v. Mutual Fire, Marine & Inland Ins. Co.,* 531 Pa. 598, 614 A.2d 1086 (1992) (recognizing that it is within authority of rehabilitator to establish claims bar date to effectively manage distressed insurer's estate).

Section 537(b) and (c) of the Act, 40 P.S. § 221.37(b) and (c), governs the late filing of claims, and it provides as follows:

(b) For good cause shown, the liquidator may permit a claimant making a late filing to share in distributions, whether past or future, as if he were not late, to the extent that any such payment will not prejudice the orderly administration of the liquidation....

(c) The liquidator may consider any claim filed late which is not covered by subsection (b) [good cause], and permit it to receive distributions which are subsequently declared on any claims of the same or lower priority if the payment does not prejudice the orderly administration of the liquidation. The late-filing claimant shall receive, at each distribution, the same percentage of the amount allowed on his claim as is then being paid to other claimants of the same priority plus the same percentage of the amount allowed on his claim as is then being paid to claimants of any lower priority. This shall continue until his claim has been paid in full.

Section 544 of the Act, 40 P.S. § 221.44, governs the order of distribution of claims, and it provides as follows:

Order of distribution

The order of distribution of claims from the insurer's estate shall be in accordance with the order in which each class of claims is herein set forth. Every claim in each class shall be paid in full or adequate funds retained for such payment before the members of the next class receive any payment....

. . . .

(g) The following claims:

. . . .

(2) Claims filed late.

. . . .

(i) The claims of shareholders or other owners.

Sections 546 and 548 of the Act govern distribution of the assets of an insurer ordered liquidated and the termination of liquidation proceedings:

§ 546. Distribution of assets

Under the direction of the court, the liquidator shall pay distributions in a manner that will assure the proper recognition of priorities and a reasonable balance between the expeditious completion of the liquidation and the protection of unliquidated and undetermined claims, including third party claims.

§ 548. Termination of proceedings

(a) When all assets justifying the expense of collection and distribution have been collected and distributed under this article, the liquidator shall apply to the court for discharge. The court may grant the discharge, and make any other orders deemed appropriate, including an order to transfer any remaining funds that are uneconomic to distribute as may be deemed appropriate.

40 P.S. §§ 221.46, 221.48.

Additionally, the Act covers the Liquidator's proposed destruction of records, and in that regard Section 550, 40 P.S. § 221.50, provides as follows:

Whenever it shall appear to the commissioner that the records of any insurer in process of liquidation or completely liquidated are no longer useful, [she] may recommend to the court what records should be retained for future reference and what should be destroyed.

Finally, Section 551, 40 P.S. § 221.51, governs external audit of the Liquidator's books, and it provides:

The Commonwealth Court may, as it deems desirable, cause audits to be made of the books of the commissioner relating to any receivership established under this article, and a report of each audit shall be filed with the commissioner and with the court. The books, records, and other documents of the receivership shall be made available to the auditor at any time without notice. The expense of each audit shall be considered a cost of administration of the receivership.

*(B)* After a thorough and careful examination of the applicable statutory provisions and case law along with the extensive evidence presented, the Court concludes that the Liquidator has satisfied the statutory requirements imposed upon her in administering the Colonial estate. Although there were audit reservations made regarding the loss of some of the records of transactions in the earlier years of the liquidation activities, the Liquidator has nevertheless produced credible evidence and information to substantiate the assets and liabilities included in the Amended Petition. Notwithstanding the objections raised by Mazzella to the Liquidator's record keeping practices and the delays in distributing the assets of the estate, among other objections, it cannot go unnoticed that through the Liquidator's handling of the estate the assets available for distribution at this time have increased by more than $11 million. *And* it is because of the Liquidator's efforts that claimants will receive 100 percent of the allowed claims.

■ As for paying interest to claimants, the Liquidator asserts that she has the discretion to direct a portion of any surplus of the Colonial estate to be paid as interest. In *Commonwealth ex rel. Woodside v. Seaboard Mutual Cas. Co.*, 420 Pa. 237, 215 A.2d 673 (1966), the Supreme Court held that liquidation does not halt the accrual of interest and that interest may be paid on claims if and when funds are available in the estate. Furthermore, the Supreme Court clearly stated that the Insurance Commissioner has "the authority to limit or deny interest which accrues *after a petition for rehabilitation or liquidation has* been filed." *Foster v. Mutual Fire*, 531 Pa. at 628—629, 614 A.2d at 1102 (relying on *American Iron and Steel Manufacturing Co. v. Seaboard Air Line Railway*, 233 U.S. 261, 34 S.Ct. 502, 58 L.Ed. 949 (1914)). In *Woodside* the court agreed that the creditors were entitled to interest on their claims where the estate proved sufficient as a result of good fortune or good management to discharge the claims in full. Additionally, in *Foster v. Mutual Fire* the Supreme Court cited *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed.

104 (1938), for the proposition that a federal judgment shall be accepted by the states as conclusive proof of the rights adjudicated therein, and it remanded to this Court the issue of the payment of interest to the judgment creditor under the rehabilitation plan in that case.

 The Liquidator maintains that her interest proposal does not create separate classes of creditors in violation of Section 544 of the Act, 40 P.S. § 221.44, as Mazzella has contended. Rather, the Liquidator asserts that she simply proposes to pay interest to the highest classes of creditors consistent with those classes identified in Section 544. *See Appeal of Washington Union Trust Co.*, 350 Pa. 363, 367—368, 39 A.2d 137, 139 (1944) ("It is well settled that principal as well as interest accruing during a receivership is paid upon preferred debts even though those of a lesser class may receive nothing.").[7]

While the Court agrees that the Liquidator has the authority and discretion to pay interest to claimants generally, the Court does not approve of the Liquidator's proposal to restrict interest solely to the highest classes of creditors or to commence interest from December 1999. Sufficient funds exist to pay interest to *all* claimants, *see Woodside*, and as a sampling of the ancillary proceedings in this case would indicate, *see infra*, not all of the delays in distribution can be attributed solely to Mazzella, either prior to or after December 1999. Accordingly, the Liquidator shall pay interest to *all* claimants and shall compute interest to accrue from July 2004, when the Liquidator filed her Amended Petition and the matter became ripe for final disposition as to all remaining issues.

*II*

 As indicated in the Findings of Fact and Conclusions of Law, the Court has ascertained no factual or legal support for Mazzella's petition to terminate the liquidation proceedings. Specifically, on March 21, 1984, Mazzella executed a "Consent to Entry of Order of Liquidation," *see* Liquidator Exhibit 8, and he has not established in these proceedings that his consent was coerced or uninformed or otherwise that it was obtained under false pretenses or entered into involuntarily. The consent provides in pertinent part:

4. Louis Mazzella, as 100% owner of Sentinal Coverages Limited, Colonial Investment Company, and Colonial, consents and agrees to Colonial's liquidation in accordance with Section 514(12) the Insurance Department Act of 1921, *as amended* (40 P.S. § 221.14(12)).

5. Louis Mazzella acknowledges and does not contest the finding of the Pennsylvania Insurance Department that Colonial is in a financially insolvent condition as set forth in the Petition for Liquidation.

---

**7.** In his Response to the Amended Petition, Mazzella also raised the issue of the Liquidator's spoliation of evidence. *See* ¶¶ 71–72. In Pennsylvania, the doctrine of spoliation provides that a party may not benefit from its own destruction or withholding of evidence. *See Manson v. Southeastern Pennsylvania Transportation Authority*, 767 A.2d 1 (Pa. Cmwlth.2001). In considering a spoliation issue, courts must examine three factors: degree of fault of the party who altered or destroyed evidence, degree of prejudice suffered by the opposing party and availability of a lesser sanction to protect the opposing party's rights and to deter future similar conduct. *See Schroeder v. Department of Transportation*, 551 Pa. 243, 710 A.2d 23 (1998). Because the Liquidator undertook a detailed and extensive search for the lost records but was unable to locate all of them and because Brown Shultz found no evidence of bad faith by the Liquidator, the doctrine of spoliation does not apply to this case.

6. Colonial admits and acknowledges that it has received proper service of the Complaint for Liquidation and waives its right to any hearing before the Court as provided for in Section 520 of the Insurance Department Act *supra,* (40 P.S. § 221.20) or any other sections or Acts. 7. Colonial consents to the entry of an order of liquidation on the terms contained in the attached proposed order [dated March 28, 1984], hereby incorporated by reference.

### III

 In connection with Mazzella's motion to roll back the claims bar date, the Court references the September 1999 order in which it set a claims bar date of May 31, 1999. That order was final and appealable as it established a cut-off date that effectively disposed of claims of an indefinite number of litigants and "put them out of court." Mazzella failed to appeal the September 1999 order, and, as a result, he has waived any objection to that order. *See* Pa. R.A.P. 903(a). Specifically, a party waives the right to appeal an order if notice of the appeal is not filed within thirty (30) days after entry of the relevant order. *Id.; see also City of Philadelphia v. Benedetto,* 801 A.2d 1276, 1280 n8 (Pa.Cmwlth.2002) ("failure to file a timely appeal effectuates waiver"). An order is final if it disposes of all claims and all parties, Pa. R.A.P. 341(b)(1), and an order is interlocutory when it does not effectively put a litigant out of court. *Stevenson v. General Motors Corp.,* 513 Pa. 411, 521 A.2d 413 (1987).

Assuming *arguendo* that the issue is not waived and that Mazzella otherwise has offered meritorious arguments to support his position, he nevertheless cannot prevail. In *Foster v. Mutual Fire* the Supreme Court approved of this Court's reasoning in rejecting a challenge to the Insurance Commissioner's June 1991 rehabilitation plan cut-off date for recognizing loss claims. This Court found that the rehabilitator did not abuse her discretion in fixing the claims cutoff date and that her decision could not be deemed arbitrary or unreasonable. Recognizing that fixing a cutoff date might work some hardships, the Court noted that the procedure was not an inflexible one and that it was both reasonable and necessary to manage the rehabilitation effectively for the ultimate benefit of all claimants.

### IV

 Regarding Mazzella's motion for surcharge, the Court has examined the Liquidator's efforts taken pursuant to Section 523(1) through Section 523(23) of the Act (from the appointment of a special deputy to act for the Liquidator to the undertaking of all available and necessary steps to aid in the Colonial liquidation), and the Court's examination conclusively establishes that there is absolutely no basis upon which to surcharge the Liquidator. Further, in *Lexington Ins. Co. v. Pennsylvania Insurance Department,* 138 Pa.Cmwlth. 6, 588 A.2d 1317 (1989), this Court held that the Insurance Department, in its capacity as statutory liquidator, owes no actionable duty in tort or in contract to third parties and held in *Vickodil v. Commonwealth, Insurance Department,* 126 Pa.Cmwlth. 390, 559 A.2d 1010 (1989), that the Insurance Department, in its capacity as statutory liquidator, owes no duty for alleged bad faith while acting within the ambit of the rehabilitator's discretion.

On one final point the Court quotes in pertinent part language from the General Release executed by Mazzella on January 20, 1988:

KNOW ALL MEN BY THESE PRESENTS, that the Commonwealth of

Pennsylvania, as liquidator of Colonial Assurance Company, [hereinafter "the Commonwealth"] and Louis Mazzella intending to be legally bound, for good and valuable consideration, agree as follows:

1. The Commonwealth and Louis Mazzella do hereby release, and discharge one another and each of their respective present and former directors, officers, employees, attorneys, agents, shareholders; and affiliated companies, including but not limited to: Sentinel Facilities, Ltd.; Sentinel Brokerage Corp.; Agency Facilities, Ltd.; and Anne Mazzella; and all other related persons and entities from any and all manner of claims and counterclaims, causes of action, damages, both known and unknown, which they otherwise might have asserted as a consequence of the operation, supervision, suspension and liquidation of Colonial Assurance Company.

### V

The Court has carefully reviewed the allegations in connection with Mazzella's petition to strike the Liquidator's Amended Petition, and it concludes without hesitation that the allegations therein are insufficient to warrant striking the Amended Petition. Mazzella repeats his claims that no statutory basis exists for the Liquidator to pay interest to claimants, but on the other hand he merely offers that under Section 544 of the Act the Liquidator's interest proposal would create separate classes of creditors. The Liquidator has satisfied the Court that she possessed the authority and discretion to pay interest to claimants, although the Court has modified the Liquidator's specific proposal as previously indicated in Part *I* of the *Discussion*.

The remaining grounds for Mazzella's petition to strike, except as previously found, are not supported by the record and, therefore, are similarly rejected by the Court. As noted, the Court agreed with Mazzella's request to preclude the Liquidator from referring to or presenting evidence at the hearing regarding Mazzella's *nolo contendere* plea and his criminal conviction. Hence, the Court denies Mazzella's petition to strike the Amended Petition.

### VI

 In his objections to the Amended Petition, Mazzella contended among many other things that the Liquidator allowed claims that lacked justification or sufficient documentation, that claims were improperly classified, that claims contained errors in computation of the amounts to be paid and that in some instances claims were overpaid. *See, e.g.,* Mazzella Exhibit 15. Some of the examples include Class B claim no. 90344 (Cintron) (no proof of injuries); Class B claim no. 90821 (Parkchester Carwash) (conflicts in medical records); Class B claim no. 93004 (Southern Services–Alabama Power) (claim allowed in excess of Colonial policy limits); Class B claim no. 93059 (Alabama Power–Southern Services) (claim not covered under policy); Class E claim no. 94223 (American Home) (claim improperly classified); Class E claim no. 91007 (Henkoff) ($4.25 error); and Class E claim no. 91493 (Gemini Service) ($0.50 overpayment).

The Court has determined, in some of the objected-to claims, that supporting documentation did in fact exist, that Mazzella's objections to claims were nominal in many instances, that court settlements were reached or verdicts obtained in others or that the Liquidator arrived at her recommendations to allow a claim based on her review of the information provided and/or on binding agreements reached

with claimants. Mazzella essentially challenges the Liquidator's judgment, and at this point it is worth reiterating that Section 545 of the Act, 40 P.S. § 221.45, expressly reserves exclusive authority in the Liquidator to review and to allow claims, and her agreements with other parties are final and binding on the Court to the extent allowed by law. This Court will not disapprove the Liquidator's report where the recommendations made do not represent an abuse of her discretion, and in its review the Court cannot conclude that the Liquidator has abused her discretion in this case.

Notably, the Liquidator has documented $627,269,548.18 in claims asserted against the Colonial estate, but after her review she ultimately allowed only $11,822,598.91 of those claims, or less than 2 percent of all claims asserted. *See* Finding of Fact 23. The initial liabilities against the estate amounted to more than $21 million but were ultimately reduced to approximately $14 million. *See* Liquidator Exhibit 15, at Exhibits A and E. Mazzella's arguments that the Liquidator abused her authority or discretion in evaluating and allowing certain claims, or that she reopened the estate after closing it to drain any potential surplus, simply cannot be sustained nor supported in view of the credible and substantial evidence of record regarding the Liquidator's efforts to marshal the assets, to invest estate funds that produced $12,145,483.23 in investment income and to create a surplus that is now available to pay in full 100 percent of all claims allowed.

In response to the objections, the Liquidator has emphasized that all of the Class B claims that Mazzella challenged for having no proof of claim are $100 claims.[8] *Compare* Mazzella Exhibit 15 with Liquidator Exhibit 17. Moreover, these claimants are reflected on the Class B documentation submitted by the Liquidator for Class B claims for the Pennsylvania and Indiana Guaranty Funds. Liquidator Exhibits 20B and 20C. The $100 for each of the claimants challenged represents the $100 not covered by the respective guaranty funds during applicable periods in which Colonial remained liable to the insured. As support, the Liquidator cited *Guttman Oil Co. v. Pennsylvania Ins. Guaranty Ass'n*, 429 Pa.Super. 523, 528–529, 632 A.2d 1345, 1348 (1993), which noted that under prior versions of the guaranty fund statute the Pennsylvania Guaranty Fund's liability is for "each covered claim which is in excess of one hundred dollars ($100) and is less than three hundred thousand dollars ($300,000)."

The Liquidator indicated, as well, that some of the class priority designations had to be reclassified to conform to federal law[9] but that the redesignations did not affect the distribution percentages. In addition, DiMemmo clearly and credibly explained the claims evaluation process, and he testified that no matter what the classification all claims will be paid at 100 percent, that the Liquidator may accept other forms to support a claim in lieu of a proof of claim form and that in the specific case of claim no. 93004 the Liquidator incurred expenses over and above the policy limits that were included in the claim amount.

---

**8.** Generally, a proof of claim is a document prepared by the Liquidator and used to obtain information necessary to process a claim. A proof of claim is akin to a petition, and one who files the form is a creditor seeking payment of funds from the Liquidator. It does not afford a right to judicial relief. *Koken v.*

*Reliance Ins. Co.*, 841 A.2d 588 (Pa.Cmwlth. 2003).

**9.** *See United States Department of Treasury v. Fabe*, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993).

## VII

■ Finally, as for the Savitsky objection, the Court recognizes the general rule that the Commonwealth and its agencies and political subdivisions cannot be made garnishees by a judgment creditor. *See* Pa. R.C.P. No. 3101(b). However, in *Pennsylvania Higher Education Assistance Agency v. Lal,* 714 A.2d 1116 (Pa. Cmwlth.1998), this Court stated the well-settled exception to this general rule. Citing *Ramins v. Chemical Decontamination Corp.,* 126 Pa.Cmwlth. 559, 568, 560 A.2d 836, 840 (1989), the Court observed:

> This doctrine [of custodia legis] provides generally that property in the possession of the state or a political subdivision that is owing to individuals may not be subject to attachment, under the policy that the government should be free from the annoyance and uncertainty of disputes between those to whom the state owns the property and others who claim a right by garnishment. The Court notes, however, that an exception to this doctrine exists where the public purpose for which the property has been held has been achieved, and the property merely awaits distribution. *Buchholz v. Cam,* 288 Pa.Super. 33, 430 A.2d 1199 (1981).

*Lal,* 714 A.2d at 1119 (citation omitted). Because the Court agrees that the exception to the general rule applies in this case, it is well within the Court's discretion to order the satisfaction of Savitsky's judgment. Accordingly, the Liquidator shall satisfy Savitsky's judgment before any distribution to Mazzella.

## CONCLUSION

In sum, it is worth repeating the well-settled principle that the purpose of the liquidation provisions of the Act is to protect the interests of the insureds, the creditors and the public generally and to protect the Liquidator's power to act in furtherance of the public good without hindrance from the courts. *See Foster v. Monsour Medical Foundation.* Consistent with that principle, the Court shall defer to the authority and discretion of the Liquidator in performing her statutory duties so long as the evidence fails to demonstrate that she abused that power.

As indicated previously in this opinion, this liquidation case has had an extraordinarily lengthy history [10] due, in part, to the voluminous filings docketed with the Court, the multiplicity of ancillary proceedings, the appeals taken from various rulings and, at varying times, to the protracted pre-hearing discovery proceedings between the parties. Notwithstanding this history, the parties have finally presented their respective cases, and the Court has

---

10. *See, e.g., Savitsky v. Mazzella,* No. 02–3745, 2004 WL 729184 (3d Cir. April 6, 2004) (upholding district court's order granting relief in aid of execution of Savitsky judgment); *Mazzella v. Koken,* No. 851 C.D.1984 (Pa. Cmwlth., filed February 3, 2004) (denying petition of Allstate and Western World Insurance Companies to intervene); *Mazzella v. Koken,* No. 851 C.D.1984 (Pa.Cmwlth., filed January 24, 2002) (granting Mazzella's motion to enforce settlement agreement regarding M & G assignment); *Mazzella v. Koken,* 559 Pa. 216, 739 A.2d 531 (1999) (denying enforcement of the parties' settlement agreement and remanding for further proceedings); *Foster v. Colonial Assurance Co.,* 668 A.2d 174 (Pa.Cmwlth.1995), *aff'd sub nom. Kaiser v. Colonial Assurance Co.,* 543 Pa. 626, 673 A.2d 922 (1996) (denying $2 million claim of Royal Bank for residual value of two helicopters pursuant to policy issued by Colonial to Spanno Corporation); *Savitsky v. Mazzella,* No. Civ.A. 89–6314, 1991 WL 165198 (E.D.Pa. August 21, 1991), *aff'd,* 961 F.2d 1568 (3d Cir.1992) (upholding Savitsky's claim against Mazzella for wrongful use of civil process in connection with prior suit by Colonial). *Also see* December 10, 2001 order of the Court overruling Mazzella's preliminary objections to Savitsky's garnishment action docketed in this Court at No. 504 M.D.2001.

now disposed of all issues between the parties that required resolution.

### *ORDER*

AND NOW, this 29th day of April, 2005, with respect to the Amended Petition filed by M. Diane Koken as Statutory Liquidator of Colonial Assurance Company (Colonial), the Court hereby orders as follows:

(1) The Liquidator's Amended Petition is approved and confirmed absolutely, subject to recalculation of interest payable on *all* claims beginning from July 14, 2004 through May 13, 2005 and a current statement of Colonial's assets and liabilities and remaining surplus payable to Louis M. Mazzella, Sr. (Mazzella) upon final distribution;

(2) The Liquidator shall file a final Amended Petition with the Court on or before May 13, 2005 to comply with the requirements of paragraph one;

(3) The Liquidator is authorized to make distributions as set forth in the Amended Petition, subject to paragraphs one and two;

(4) Mazzella's Petition to Terminate the Liquidation Proceedings, Discharge the Liquidator and Reinstate the Charter of Colonial Assurance Company is denied and dismissed with prejudice;

(5) Mazzella's Motion to Roll Back the Claim Bar Date is denied and dismissed with prejudice;

(6) Mazzella's Motion for Surcharge is denied and dismissed with prejudice;

(7) Mazzella's Petition to Strike the Amended Petition is denied and dismissed with prejudice;

(8) Mazzella's remaining objections and supplemental objections to the Amended Petition are denied and dismissed with prejudice;

(9) The Liquidator shall satisfy Robert. Savitsky's judgment prior to any distribution to Mazzella and shall pay any interest required under terms of the judgment. To receive payment, Savitsky must first provide satisfactory proof to the Liquidator of the judgment amount and dismiss the garnishment action against the Liquidator with prejudice;

(10) The Liquidator is authorized to destroy the records of Colonial other than appropriate administrative files and records within the Liquidator's discretion, except that any remaining records not previously transmitted to Mazzella regarding assignment of reinsurance claims shall be turned over to Mazzella upon entry of this order;

(11) Any assets of Colonial received after the date of discharge are to be used to satisfy any unreimbursed administrative expenses incurred by the Liquidator, and any excess is to be applied to future liquidation proceedings; and

(12) M. Diane Koken, Insurance Commissioner, is hereby discharged as the Statutory Liquidator and is released from any liability to pay any further claims against the Colonial estate upon compliance with the requirements of paragraphs one and two.